JOANN W. WADDLE AND JACQUELINE E. SIMPSON v. JACK SPARKS AND GUILFORD MILLS, INC.

No. 8918SC1031

(Filed 21 August 1990)

1. **Trespass § 2 (NCI3d)— intentional infliction of emotional distress—sexual harassment by supervisor—sufficient forecast of evidence**

   Plaintiff's forecast of evidence presented genuine issues of material fact for the jury in an action against her former supervisor for intentional infliction of emotional distress based on various sexually connotative statements and offensive actions.

   **Am Jur 2d, Fright, Shock, and Mental Disturbance § 17; Trespass §§ 8, 18.**

2. **Master and Servant § 29 (NCI3d)— negligent retention of supervisor—sufficient forecast of evidence**

   Plaintiff's forecast of evidence was sufficient to maintain her claim against defendant employer for negligent retention of her supervisor where it would permit a jury to find that the supervisor's behavior constituted the intentional infliction of emotional distress, the supervisor was acting within the course and scope of his employment, and defendant employer impliedly ratified the supervisor's behavior after plaintiff

reported the supervisor's actions to the employer's personnel director.

**Am Jur 2d, Master and Servant § 213.**

3. **Trespass § 2 (NCI3d)— intentional infliction of emotional distress — statute of limitations — insufficient forecast of evidence**

A second plaintiff's forecast of evidence was insufficient to establish a claim against her former supervisor for intentional infliction of emotional distress where there was no evidence that any of the incidents upon which plaintiff relied took place within the three year statute of limitations period.

**Am Jur 2d, Master and Servant § 357.**

Judge LEWIS concurring in part and dissenting in part.

APPEAL by plaintiffs from judgment entered 8 June 1989 by *Judge Russell G. Walker, Jr.* in GUILFORD County Superior Court. Heard in the Court of Appeals 4 April 1990.

On 20 April 1988, plaintiffs filed a complaint against defendants alleging intentional and negligent infliction of mental distress against defendant Sparks and negligent hiring and retention of defendant Sparks by defendant Guilford Mills. Defendants filed motions for summary judgment on 24 April and 26 April 1989. The trial court granted these motions on 15 June 1989.

From the orders granting summary judgment to defendants, plaintiffs appeal.

*Ling & Farran, by Jeffrey P. Farran, for plaintiff-appellants.*

*Smith Helms Mulliss & Moore, by Martin N. Erwin and Michael A. Gilles, for defendant-appellee Guilford Mills, Inc.; and Haines, Short, Campbell & Ferguson, by W. Marcus Short, for defendant-appellee Jack Sparks.*

ORR, Judge.

The sole issue on appeal is whether the trial court erred in granting summary judgment for defendants. For the reasons below, we hold that the trial court erred in granting summary judgment for defendants against plaintiff Waddle and affirm the summary judgment against plaintiff Simpson.

WADDLE v. SPARKS

[100 N.C. App. 129 (1990)]

Under N.C. Gen. Stat. § 1A-1, Rule 56(c) (1983), a motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." This remedy permits the trial court to decide whether a genuine issue of material fact exists; it does not allow the court to decide an issue of fact. *Sauls v. Charlotte Liberty Mut. Ins. Co.*, 62 N.C. App. 533, 535, 303 S.E.2d 358, 360 (1983) (citations omitted).

In a summary judgment proceeding, the trial court must determine if there is a triable material issue of fact, viewing all evidence presented in the light most favorable to the nonmoving party. *Land-of-Sky Regional Council v. Co. of Henderson*, 78 N.C. App. 85, 336 S.E.2d 653 (1985), *disc. review denied*, 316 N.C. 553, 344 S.E.2d 7 (1986); *Walker v. Westinghouse Electric Corp.*, 77 N.C. App. 253, 335 S.E.2d 79 (1985), *disc. review denied*, 315 N.C. 597, 341 S.E.2d 39 (1986). Summary judgment is generally inappropriate when a state of mind such as intent or knowledge is at issue. *Valdese Gen. Hosp. v. Burns*, 79 N.C. App. 163, 165, 339 S.E.2d 23, 25 (1986) (citation omitted). With these general principles in mind, we now turn to whether the trial court erred in granting summary judgment against plaintiffs.

Both plaintiffs argue that summary judgment was improper regarding their claims of intentional infliction of emotional distress. The elements of this tort are: (1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress. *Dickens v. Puryear*, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981). This tort also may lie where a "defendant's actions indicate a reckless indifference to the likelihood that they will cause severe emotional distress." *Id.* The statute of limitations for the tort of intentional infliction of emotional distress is three years. *Id.* at 444, 276 S.E.2d at 330.

I.

*Plaintiff Waddle's Action*

Plaintiff Waddle's allegations in the complaint and her testimony at her deposition indicate the following acts occurred within three years of the 20 April 1988 date of the complaint.

1. Plaintiff began her employment for Defendant Guilford Mills (hereinafter Guilford Mills) in 1970, and voluntarily terminated her employment (rather than be fired) in October 1987. Defendant Sparks began his employment as Waddle's shift supervisor in early 1983. At all times alleged, Sparks acted within the course and scope of his employment for Guilford Mills.

2. Sometime in March 1986, plaintiff and some other workers were threading a machine and one worker mentioned greasing the balls. Waddle heard Sparks state something to another employee to the effect of, "what are you worrying about Bill's balls for?"

3. In the fall of 1985, Waddle had a cut on her finger which became infected with pus. When she went to the supervisor's office to have her finger treated, Sparks stated, "yeah, Joann's got a pussy finger. Walt's going to have to work on Joann's pussy." As someone else was coming into the office Sparks stated, "You can't go in there right now. Walt's working on Joann's pussy finger." Waddle testified that as the defendant spoke he paused between the words "pussy" and "finger."

4. Waddle testified that beginning in 1983, Sparks constantly used sexual innuendoes and injected sexual statements into ordinary conversations, which continued throughout Waddle's employment.

5. On two occasions in 1983, Sparks attempted to brush up against Waddle's breasts. This behavior continued until sometime in 1984. Waddle testified that she was continually watching for Sparks' attempts to rub against her so that she could get away from him.

6. Sometime in March or April 1985, plaintiff and Sparks were examining some fabric and Waddle commented that the fabric "has four holes the way it's supposed to." Sparks replied, "do you have four holes? I bet you know how to use all of them, don't you?"

7. As early as the fall of 1985, Waddle complained about Sparks to Assistant Plant Manager Ed Gray about several things including Sparks' "vulgar and filthy" mouth. Sparks acknowledged in his deposition that he had received a verbal reprimand from Plant Manager John Moffitt concerning his vulgar language.

8. In November or December 1985, Waddle complained to Personnel Director Brenda Shelton about Sparks' unfair treatment concerning job assignments and his "filthy mouth."

[1] Viewing the above evidence in the light most favorable to Waddle, we hold that the trial court erred in granting summary judgment in favor of defendants. First, there are sufficient facts alleged to raise a question of whether Sparks' conduct was extreme and outrageous. The allegations are sufficient to establish that Sparks' behavior constituted more than insults or unflattering opinions.

Second, there are sufficient facts to raise a question of what Sparks intended by his behavior. There is not enough evidence before the trial court to make a conclusive determination that Sparks *did not intend* to cause severe emotional distress to Waddle. Sparks testified that there was no truth to any of Waddle's allegations. Therefore, there was no emotional distress to Waddle and no intent on his (Sparks) part to create emotional distress. However, when there is a question of intent, summary judgment is usually inappropriate. *See Valdese Gen. Hosp. v. Burns*, 79 N.C. App. 163, 339 S.E.2d 23 (1986).

Moreover, Waddle alleged that she was humiliated and upset over the situation at work with Sparks' alleged sexual harassment and was intimidated. Viewing this evidence in the light most favorable to Waddle, it is not conclusive proof of emotional distress, but it at least raises an issue of fact for a jury.

[2] Third, with regard to plaintiff's complaint that defendant Guilford Mills negligently retained Sparks as an employee, the evidence raises enough questions concerning whether Sparks was acting in the course and scope of his employment and whether his behavior was impliedly ratified by Guilford Mills after Waddle reported Sparks to Brenda Shelton. Before an employer may be held liable for negligent retention of an employee, plaintiff must establish that the incompetent employee committed a tortious act resulting in injury to plaintiff, and that prior to the act, the employer knew or had reason to know of the employee's incompetency. *Pleasants v. Barnes*, 221 N.C. 173, 177, 19 S.E.2d 627, 629 (1942). Waddle's evidence raises such inferences here.

There is evidence in the case *sub judice* that some of Sparks' behavior was reported to Ms. Shelton. There is no evidence before

us concerning what Ms. Shelton did with the information she obtained from Waddle. There is certainly no evidence that Sparks was ever confronted after December 1985 with the information available to Ms. Shelton. Therefore, we hold that summary judgment was granted improperly in favor of Guilford Mills with regard to plaintiff Waddle.

Finally, defendants argue that plaintiffs' claim for relief is grounded in assault and battery (not intentional infliction of emotional distress); and therefore, the statute of limitations is one year instead of three years. Under this affirmative defense, plaintiffs' claim would be completely barred because none of the alleged incidents occurred within one year of April 1988 when plaintiffs filed their complaint. We find this argument to be completely without merit. *See Dickens v. Puryear*, 302 N.C. 437, 276 S.E.2d 325 (1981), and the cases cited therein. (In order for an action to lie in assault and battery, there must be an apprehension of immediate harmful or offensive contact, as distinguished from one in the future. Threats, without an offer or attempt to show violence, are not assaults.)

## II.

### Plaintiff Simpson's Claims

[3] Plaintiff Simpson began working at Guilford Mills in 1983 and terminated her employment in 1986. The forecast of Simpson's evidence indicates that her supervisor, Sparks, engaged in a course of behavior including the use of foul language, sexual innuendoes, and obscene gestures toward her and other employees. Many of her allegations and testimony in her deposition are similar to Waddle's as reviewed above.

Simpson, however, can place no time period in which Sparks allegedly intentionally inflicted emotional distress. She was unable to place a day, month or year on any of the specific events she alleged. Therefore, viewing the evidence in the light most favorable to Simpson, she is unable to prove that any of the specific acts she alleged occurred after March 1985, which would have placed them within the three year statute of limitations period.

Simpson did not allege or testify to a single act by Sparks or a group of acts by Sparks that occurred within the limitations period. The following exchange is one example of Simpson's response concerning when the incidents alleged occurred.

Q. When did that occur?

A. I can't say for sure.

Q. How long before you left?

A. I have no idea.

Q. Could it have been as much as a year?

A. It might have.

Q. Maybe more?

A. I don't know. I don't remember.

Q. You have no idea when that occurred?

A. No.

Q. You can't even tell us which year it occurred in?

A. No. Like I said, there was lots of them.

There is simply no evidence to indicate that any of the alleged incidents regarding Simpson took place within the three year statute of limitations period. For this reason, we hold that the trial court did not err in granting summary judgment to defendant Sparks against plaintiff Simpson.

Moreover, we hold that the trial court did not err in granting summary judgment to Guilford Mills against plaintiff Simpson. Because the evidence is insufficient to establish Simpson's claim against Sparks, Simpson may not maintain an action against Guilford Mills based upon its negligence in employing or retaining Sparks. *See Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 340 S.E.2d 116, *disc. review denied*, 317 N.C. 334, 346 S.E.2d 140 (1986).

In summary, we hold that the trial court erred in granting summary judgment against plaintiff Waddle and did not err in granting summary judgment against plaintiff Simpson and remand to the trial court for action consistent with this opinion.

Affirmed in part; reversed in part; and remanded.

Judge GREENE concurs.

Judge LEWIS concurs in part and dissents in part.

Judge LEWIS concurring in part and dissenting in part.

I respectfully dissent from the majority regarding plaintiff Waddle's claims. I do not believe she has made out a claim for intentional infliction of emotional distress or negligent hiring.

One of the key elements of the tort of intentional infliction of emotional distress is proving that the defendant intentionally or recklessly caused severe emotional distress. *Stanback v. Stanback*, 297 N.C. 181, 196, 254 S.E.2d 611, 621-22 (1979). Furthermore, for purposes of summary judgment, we must decide whether, as a matter of law, the conduct complained of "may reasonably be found to be sufficiently outrageous as to permit recovery." *Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 490, 340 S.E.2d 116, 121, *disc. rev. denied*, 317 N.C. 334, 346 S.E.2d 140 (1986).

The majority opinion cites an occasion when defendant Sparks made a comment about "Bill's balls." I think it is important to note that this statement was in response to a female worker's comment to him, whereby the worker shouted to Sparks, "Jack, listen over here. Frances is worried about whether Bill's greased his balls or not." Sparks responded, "what are you worrying about Bill's balls for." These comments were not directed at the plaintiff and were obviously made in response to some off-color joking made by another female employee.

The comments made by defendant Sparks about Waddle's "pussy finger" relative to an infected finger with pus and her having "four holes" and knowing how to use them, were directed at Waddle. Even if we assume that the plaintiff has shown that these comments could reasonably be found to be sufficiently outrageous as to permit recovery, she still must show that these statements were intended to cause and *did* cause her *severe* emotional distress. Waddle alleged that she was continually upset and frequently cried. However, she has made no showing on this point. Her deposition reveals only one incident where she testified that she was crying:

> I went in the office where he [Sparks] was-was when I first started threading . . . I went in and told him that Virginia McKee had left the machine that she was working on with me and had gone off to a machine with Frances Russell to work. And that instead of Virginia going on to the next machine like she was supposed to with a cutout, she left the cutout for me. And I told him, I was getting the dirty work. And

**WADDLE v. SPARKS**

[100 N.C. App. 129 (1990)]

he said, 'No, No. Virginia would never do anything like this. Virginia would never do that.'. . . And I was crying, very upset. I sat there until I got through crying. He talked to me a little bit, and he said, 'Virginia-Virginia's not like that, she'd never do that.'

This is the *only* testimony offered by the plaintiff that she was emotionally distressed by the defendant's conduct. She also stated that she complained to her supervisors about the conduct and eventually left her job. There is no other testimony to show that Sparks intended to cause or did cause Waddle severe emotional distress. This is hardly a showing of distress at all, much less severe distress. The above testimony has nothing to do with any conduct by defendant Sparks. Plaintiff admits that she never directly complained to Sparks about any of his alleged remarks. Plaintiff has completely failed to show that Sparks intended to cause and did in fact cause her severe emotional distress. Plaintiff apparently was upset by "Virginia's" actions much more than Sparks.

As one offended by the language in "R" rated movies, having seen only one in the last five years, I certainly do not sanction vulgar or even off-color innuendo. Our business here is not to impose our personal preferences but to follow the law as we see it. I do not see proof of "extreme or outrageous" behavior here nor intentional infliction of "severe" emotional distress nor any forecast of proving any of it.

I would also affirm the dismissal of Waddle's claim as to the negligent retention of an employee. Before an employer can be held liable, plaintiff must show that the incompetent employee committed a tortious act resulting in injury to plaintiff and that prior to the act, the employer knew or had reason to know of the employee's incompetency. *Pleasants v. Barnes*, 221 N.C. 173, 19 S.E.2d 627 (1942). Intentional infliction of emotional distress by Sparks is the underlying tortious conduct relied upon by Waddle to establish her claim. Because I believe Waddle has failed to make out the underlying tort, she may not maintain an action based upon Guilford Mills' retention of Sparks. *See Hogan v. Forsyth Country Club Co., supra.* I would therefore affirm the order of the trial court.