PEGGY S. BRYANT, PLAINTIFF v. THALHIMER BROTHERS, INC. AND SCRUGGS
COLVIN, DEFENDANTS

No. 9121SC814

(Filed 21 December 1993)

1. **Intentional Infliction of Mental Distress § 2 (NCI4th) — statute of limitations — acts more than three years before claim filed**

    Evidence of sexual harassment and retaliation which occurred more than three years prior to the filing of plaintiff's claim against her supervisor and employer for intentional infliction of emotional distress did not constitute evidence of complete and separate torts but was evidence of elements of the claim itself and was not barred by the three-year statute of limitations. Furthermore, plaintiff's claim was not barred by the statute of limitations where she presented evidence of specific incidents which occurred within three years of the filing of her claim and of medical treatment for emotional distress that she received during that time as a result of her supervisor's conduct.

    **Am Jur 2d, Fright, Shock, and Mental Disturbance § 17.**

2. **Evidence and Witnesses § 1174 (NCI4th) — summary judgment hearing — statements by attorney — not judicial admissions**

    Statements made by plaintiff's counsel to the trial court during a summary judgment hearing to the effect that plaintiff

1

**BRYANT v. THALHIMER BROTHERS, INC.**

[113 N.C. App. 1 (1993)]

was not seeking damages for events occurring more than three years before the complaint was filed did not constitute judicial admissions and were not binding on the plaintiff in the subsequent trial.

**Am Jur 2d, Evidence §§ 597, 615, 665.**

3. **Intentional Infliction of Mental Distress § 3 (NCI4th) — sufficiency of evidence against supervisor — employer's ratification of supervisor's acts**

Plaintiff's evidence of conduct and intent was sufficient for submission to the jury of plaintiff's claim against her former supervisor for intentional infliction of emotional distress where it tended to show that when plaintiff rebuffed sexual advances by defendant supervisor, he began treating plaintiff unfairly, repeatedly threatened her and her job, and created situations in which she could not effectively do the work assigned to her; plaintiff received unfavorable evaluations, was required to hire staff persons she felt were unqualified, and was called names such as "Nazi," "Rambo," and "Gestapo" by defendant supervisor; and defendant supervisor's conduct caused plaintiff to seek medical attention from two doctors and to resign from her job. Furthermore, the evidence supported plaintiff's claim that defendant employer ratified the acts of defendant supervisor so that the employer was liable for his actions where it tended to show that plaintiff submitted twenty-two complaints about her supervisor to the employer's personnel manager and held conversations with other management personnel about defendant's conduct; plaintiff's discussions with management personnel which she thought were held in confidence were reported to defendant supervisor; management personnel told plaintiff that complaints of that nature were not welcome from employees; nothing was ever done about defendant supervisor's conduct toward plaintiff; plaintiff was told that she had a bad attitude and was placed on probation; and plaintiff thereafter resigned her job.

**Am Jur 2d, Fright, Shock, and Mental Disturbance § 17.**

4. **Jury § 68 (NCI4th) — jury less than twelve — stipulation — excusal of jurors for "guilty" rather than "innocent" reasons**

Where the parties in an action for intentional infliction of emotional distress stipulated at the beginning of the trial

## BRYANT v. THALHIMER BROTHERS, INC.

[113 N.C. App. 1 (1993)]

that the trial could proceed with a jury of ten persons if necessary, the trial court did not abuse its discretion in the denial of defendants' motions for a mistrial and a new trial because the verdict was rendered by a ten-person jury after the trial court excused two jurors who had read a newspaper article reporting that the court had allowed defendants' pretrial motion to suppress evidence of the individual defendant's sexual involvement with other women employed by defendant employer. There was no merit to defendants' argument that their agreement to a jury of ten persons was only to allow the trial to proceed in the event of illness or emergency of jurors, an "innocent" reason, and not to allow a jury of less than twelve for the "guilty" reason that two jurors had read a newspaper article about evidence excluded by pretrial motion, since an agreement to have a verdict by less than twelve jurors does not depend on whether the jurors are excused for an "innocent" rather than a "guilty" reason.

**Am Jur 2d, Jury § 124 et seq.**

Appeal by defendants from judgment entered 25 January 1991 in Forsyth County Superior Court by Judge James A. Beaty, Jr. Heard in the Court of Appeals 15 September 1992.

This action arises out of a female employee's complaints against a male supervisor at Thalhimer Brothers in Winston-Salem. Plaintiff was employed by Thalhimers from September 1982 until her resignation in February 1987.

The plaintiff filed suit on 5 December 1989, seeking damages for intentional infliction of emotional distress, wrongful termination, and negligent retention. The complaint alleged that the defendant Scruggs Colvin, who was employed by Thalhimers as the regional manager in loss prevention in 1984, began harassing her sexually in early 1985.

The plaintiff further alleged that when she rebuffed the sexual advances of her supervisor, he began treating her unfairly in an attempt to force her resignation. From 1986 until her resignation, the complaint alleged that he repeatedly threatened her and her job, while creating situations in which she could not effectively do the work assigned to her. She received unfavorable evaluations, she was required to hire staff persons that she felt were unqualified, and she was called names such as "Nazi", "Rambo", and "Gestapo"

by the defendant. Plaintiff contended that during this period she complained to supervisory personnel with the corporation about these incidents of harassment and retaliation.

The defendants' answer denied the material allegations of the complaint and raised, *inter alia*, the affirmative defense of the three-year statute of limitations. The defendants asserted that the statute barred recovery for damages for events which occurred prior to 5 December 1986. Defendants moved for summary judgment on that basis. The motion was denied on 15 November 1990.

Just prior to trial, the defendants filed motions *in limine* seeking to exclude evidence of Defendant Colvin's prior sexual relationships with other employees of Thalhimers and to exclude evidence of events that was barred by the statute of limitations. Additionally, they filed a motion to compel admissions based on representations made by plaintiff's counsel during the earlier summary judgment hearing to the effect that the plaintiff was not seeking damages for events occurring prior to 5 December 1986. The motion to exclude the evidence of past relationships was allowed, while the motion to exclude the incidents prior to December 1986 and the motion to compel admissions were denied.

Jury selection was completed on 9 January 1991. The next day, an article appeared in the Winston-Salem Journal which reported the evidence of the prior sexual relationships of Defendant Colvin and that it had been excluded from the trial. Two of the jurors had read the article and were excused by the judge. Three other jurors were aware of the article, and one juror had been told by her husband not to read the article. Defendants moved for a mistrial, having produced evidence that the plaintiff's counsel had released the excluded evidence to the newspaper. That motion was denied. The trial proceeded with ten jurors.

At the close of plaintiff's evidence, defendants moved for a directed verdict which was denied and subsequently renewed at the close of all the evidence. At that time, the trial court allowed the motion with respect to the wrongful termination claim.

The claim for intentional infliction of emotional distress went to the jury on 23 January 1991. The trial judge denied the defendants' request for an instruction on the three-year statute of limitations. The following day, the jury returned a verdict for the plaintiff of $25,000.00 in compensatory damages and $225,000.00 in punitive

damages. On 1 February 1991, the defendants filed motions for judgment notwithstanding the verdict and a new trial. These motions were denied by the trial judge. Defendants appeal from the judgment entered upon the jury verdict.

*Kennedy, Kennedy, Kennedy & Kennedy, by Harold L. Kennedy, III, Harvey L. Kennedy and Annie Brown Kennedy, for plaintiff-appellee.*

*Haynsworth, Baldwin, Johnson and Greaves, P.A., by Charles P. Roberts III and Gregory P. McGuire, for defendant-appellants.*

ORR, Judge.

We note at the onset that we are in our discretion addressing the merits of the defendants' first argument pursuant to Rule 2 of the North Carolina Rules of Appellate Procedure. The issue has not been raised properly. As a result of incorrect pagination, the page stating the argument and referencing the assignment of error has been omitted. Ordinarily, if a party fails to include references to the assignment of error, the question is deemed abandoned and will not be considered on appeal. However, "[t]o prevent manifest injustice to a party, or to expedite a decision in the public interest . . .", Rule 2 allows us to waive this requirement and proceed to the merits. *See State v. Shelton*, 53 N.C. App. 632, 635, 281 S.E.2d 684, 688 (1981), *appeal dismissed and cert. denied*, 305 N.C. 306, 290 S.E.2d 707 (1982).

I.

The defendants have raised eight assignments of error for review by this Court. Initially, we address those issues which revolve around the applicable statute of limitations and the exclusion of evidence of conduct of Defendant Colvin which occurred prior to 5 December 1986.

Defendants first contend that the trial court committed reversible error in denying their motions for directed verdict and judgment notwithstanding the verdict because the plaintiff's claim arising out of the defendants' conduct prior to 5 December 1986 was barred by the three-year statute of limitations applying to claims of intentional infliction of emotional distress. Secondly, they argue that plaintiff's counsel made admissions during the arguments on preliminary motions that effectively foreclosed plaintiff seeking damages for events occurring prior to 5 December 1986.

Third, they argue that the trial judge committed error in refusing to instruct the jury on the applicable statute of limitations. Finally, they assert that the trial court's denial of the defendants' motion *in limine* to exclude evidence of events prior to 5 December 1986 was reversible error.

We hold that the evidence of conduct occurring prior to the 5 December 1986 date was not evidence of complete and separate torts, but rather was evidence of the elements of the claim itself and therefore, was not barred by the statute of limitations. Accordingly, we overrule the defendants' assignments of error based on the statute of limitations.

## A.

[1]    The defendants assert that the plaintiff's claim for intentional infliction of emotional distress is barred by the three-year statute of limitations found at N.C. Gen. Stat. § 1-52(5). *See also Waddle v. Sparks*, 100 N.C. App. 129, 394 S.E.2d 683 (1990), *aff'd in part and reversed in part on other grounds*, 331 N.C. 73, 414 S.E.2d 22 (1992).

It is well settled in North Carolina that in determining whether the evidence is sufficient to withstand a motion for a directed verdict, the plaintiff's evidence must be taken as true and all the evidence must be viewed in the light most favorable to her, giving her the benefit of every reasonable inference which may be legitimately drawn therefrom, with conflicts, contradictions, and inconsistencies being resolved in the plaintiff's favor. *Hornby v. Pennsylvania National Mutual Casualty Insurance Co.*, 62 N.C. App. 419, 303 S.E.2d 332, *cert. denied*, 309 N.C. 461, 307 S.E.2d 364 (1983). Where more than a scintilla of evidence has been presented by the plaintiff which supports each element of his *prima facie* case, a directed verdict should be denied. *Snead v. Holloman*, 101 N.C. App. 462, 400 S.E.2d 91 (1991). A motion for a judgment notwithstanding the verdict is essentially the renewal of the directed verdict motion, and the standards are the same. *Miller v. Cannon Motors, Inc.*, 40 N.C. App. 48, 257 S.E.2d 925 (1979). Both motions serve to test the sufficiency of the evidence presented at trial, first after the plaintiff's case in chief and then again after the jury's decision.

In order to prove a claim for intentional infliction of emotional distress, the plaintiff is required to show that the defendant (1)

engaged in extreme and outrageous conduct, (2) which was intended to cause and did cause (3) severe emotional distress. *Hogan v. Forsyth Country Club*, 79 N.C. App. 483, 340 S.E.2d 116, *review denied*, 317 N.C. 334, 346 S.E.2d 140 (1986). The tort may also lie where a "defendant's actions indicate a reckless indifference to the likelihood that they will cause severe emotional distress." *Dickens v. Puryear*, 302 N.C. 437, 452, 276 S.E.2d 325, 330 (1981). The statute of limitations for the tort of intentional infliction of emotional distress is three years. *Id.* at 444, 276 S.E.2d at 330. "Civil actions can only be commenced . . . [within the three-year period], after the cause of action has accrued, . . . ." N.C. Gen. Stat. § 1-15(a) (1983).

The recent decision by the North Carolina Supreme Court, *Waddle*, 331 N.C. 73, 414 S.E.2d 22, held that where the plaintiff could not show that "any of the specific incidents" took place within the statutory period, she could not survive a motion for summary judgment. In *Waddle*, suit was filed on 20 April 1988. Both plaintiffs alleged intentional infliction of emotional distress in response to repeated harassment and sexual innuendoes by the defendant Sparks. The purported harassment began sometime in 1983. Both the defendants pleaded the statute of limitations as an affirmative defense in their answer and moved for summary judgment on that basis after depositions of the plaintiffs were taken. The co-plaintiff, Simpson, could not produce evidence of *any* specific acts of harassment within three years of the filing of the suit. "Not only could she not remember a day or month when any of defendant's alleged comments of a sexually suggestive nature occurred, but she also failed to recall the year they occurred." *Waddle*, 331 N.C. at 86, 414 S.E.2d at 29. "If plaintiff Simpson could have testified that any of the specific incidents with Sparks occurred as late as February of 1986, her evidentiary forecast . . . would have been sufficient to survive a summary judgment motion based on the statute of limitations." *Id.* at 87, 414 S.E.2d at 29.

The issue in *Waddle*, as to the plaintiff Simpson, was whether there was sufficient evidence of each element of the tort to create an issue for the jury to decide at trial. Simpson could not show *any* evidence of one of the elements of the tort, and therefore, summary judgment was appropriate. However, the Court in no way suggested that the prior occurrences would have been excluded at trial, nor was the issue of exclusion of evidence before the Court. Moreover, in the case at bar, there were two incidents

occurring on or after 5 December 1986. Therefore, there was sufficient evidence to create an issue to be decided at trial, certainly when combined with evidence of the incidents of alleged conduct which took place in 1985.

The defendants rely on the rule of *Dickens v. Puryear*, 302 N.C. 437, 276 S.E.2d 325, which established that three years is the applicable statute of limitations for claims of intentional infliction of emotional distress and that evidence of the defendants' intentional torts against the plaintiff which took place prior to the applicable limitations period may not be considered in determining damages. However, both the law and the facts of *Dickens* are distinguishable from the case at bar.

In *Dickens*, the plaintiff alleged intentional infliction of emotional distress in his complaint which was filed more than one year and less than three years after the incident complained of took place. The action arose out of a single occurrence during which the defendant not only committed an assault and battery (governed by the one-year statute of limitations of G.S. § 1-54(3) ) against the plaintiff, but also made significant threats of future harm. The defendant argued that the action was only one for assault and battery, although cast as one for intentional infliction of emotional distress. They further argued that even if the plaintiff had alleged a cause of action for emotional distress, that it, too, was governed by the one-year statute. The Supreme Court disagreed, finding that the more general language of G.S. § 1-52(5) controlled the intentional infliction claim and that the plaintiff's showing was sufficient to create an actionable claim for emotional distress. The Court concluded that "[a]lthough the assaults and batteries serve to color and give impetus to the future threat and its impact on plaintiff's emotional condition, plaintiff may not recover damages flowing directly from the *assaults and batteries* themselves." *Dickens*, 302 N.C. at 455, n. 11, 276 S.E.2d at 336 (emphasis added). The Court further stated that, "[a]lthough plaintiff's recovery for injury, mental or physical, directly caused by the assaults and batteries is barred by the statute of limitations, these assaults and batteries may be considered in determining the outrageous character of the ultimate threat and the extent of plaintiff's mental or emotional distress caused by it." *Id.* Thus, while the Court did not allow damages for the separate torts, it did allow the *evidence* of the extreme and outrageous conduct of the defendant as an *element*

BRYANT v. THALHIMER BROTHERS, INC.

[113 N.C. App. 1 (1993)]

of the plaintiff's emotional distress claim, even though an assault and battery claim was barred.

In the case *sub judice*, the evidence presented at trial tended to indicate that incidents between the plaintiff and Defendant Colvin began in early 1985, soon after he was hired by Thalhimers in 1984. According to the plaintiff's testimony, the first conversation of a sexual nature was on a trip to Sears in Hanes Mall in Winston-Salem to pick up supplies for the Hanes Mall Thalhimers location. The defendant asked her if she'd ever had an affair with anyone. She responded that she had not. The plaintiff also testified to the following:

A. He told me he liked women with large breasts.

Q. When he made that statement to you, can you tell the ladies and gentlemen of the jury what he was looking at?

. . .

A. He was looking down at my breast area.

On another occasion of sexually related conduct, the plaintiff testified that

[w]e were moving the desk. And I was on one side and he was on the other. And I had hold of the desk and he came around on my side and he rubbed his penis across my hand. And I don't know how, but it got caught in my ring and I jerked my hand away because was—it just flew all over me, embarrassed me. I was just humiliated. I mean it just—it just embarrassed me to death.

The plaintiff also testified that the next day

he called me down to the office. And he was sitting on my desk facing me. And he told me to pull my pants down because he wanted to see a bee sting. And he didn't smile. He had that same dirty grin on his face.

She told him at that time that he made her sick to her stomach. He then "jerked my door open and slammed it and left." Except for the last incident, which plaintiff testified could have been an accident, the defendant never physically touched the plaintiff.

On 24 September 1985, the plaintiff submitted some twenty-two complaints about Mr. Colvin to Tida Williams, personnel

manager. She told Ms. Williams that she would be hiring an attorney to bring harassment charges against Colvin. Ms. Williams recorded the complaints and the conversation with the plaintiff in a file memorandum and spoke to Colvin about his behavior.

Incidents continued between the plaintiff and the defendant throughout 1986 until her resignation in 1987. According to the plaintiff's testimony, the occurrences ceased to be sexual in nature, but began to follow a retaliatory scheme. She testified that, "He would call me and hang up on me. He wouldn't say bye. He would slam the phone down." She further stated that the defendant's behavior "got worse and worse until I left the company." She testified that he called her "a hangman, gestapo, Nazi, . . . any kind of demoralizing name."

The evidence indicated that the plaintiff notified upper management again in early 1986 about Colvin's behavior towards her. Shortly after she spoke with those individuals, Colvin came into her office and told her that he knew of her accusations. She testified that the defendant clenched his fists "and put his finger up in front of me and he told me he was going to get me fired."

The plaintiff testified that after the above meeting, Mr. Colvin's behavior became "more extreme and more intent." She testified that once he called her office ten times in thirty minutes and that on another occasion, she was required to hire unqualified employees and then was told she had improperly trained them when they were asked to resign.

The plaintiff stated that she called Steve Loomis, Vice-President of Loss Prevention, on 15 November 1986, to discuss Colvin's continued harassment. On 3 December 1986, Mr. Loomis and Mr. Colvin met with the plaintiff. She testified that during that meeting she became aware that all of the management personnel with whom she had spoken had also discussed her confidential conversations with Colvin. At the meeting, Loomis said that she had a serious attitude problem. She had not previously met Loomis (except briefly at a meeting), nor had she ever been under his supervision. Loomis told her that her accusations against Colvin were not true. She testified that Loomis and Colvin began walking "around me and around me. And when I would try to say something, he [Colvin] would tell me to shut up. He said 'you are here to listen and not to talk.' " She further testified that Loomis called her a "gestapo

and Nazi" and that Colvin would then laugh. She became so upset during that meeting that she could not recall how it ended.

The plaintiff testified that approximately two weeks later, on 16 December 1986, Tida Williams, Steve Loomis, and Colvin arrived late in the day without notice and delivered to her a completed performance evaluation. She was told to sign the document even though the evaluation was negative and she disputed the contents. On 10 January 1987, the plaintiff was called into Thalhimers' personnel office by Mr. Colvin and was placed on probation. Tida Williams, the Personnel Manager, was present and was taking notes. On 5 February 1987, the plaintiff resigned. At the time of her resignation, she had been under a doctor's care since December. She stated in her resignation letter the following:

> My reasons for my resignation are: I cannot return to Thalhimers' because I feel it would be harmful to my mental and physical health. This is due to the direct actions of Bud Colvin, my present supervisor, and also comments made to me — against me and to me by Steve Loomis, vice president of loss prevention, in the past few months.
>
> . . .
>
> When I went to the company and complained to them about serious problems with Bud Colvin, I was punished for this. Bud Colvin even told me that he was going to get me! I was spoken to over and over again as if I was nothing.
>
> Steve Loomis called me a "hangman, Rambo, and the final blow, the gestapo!" Bud Colvin has also called me these words before.
>
> . . .
>
> I feel I have lost my self esteem and self worth as an employee and as a person. All these months of extreme stress has caused me mental and physical harm. It has also affected my personal life at home.

(Emphasis in original.) It is clear that the plaintiff presented evidence of specific incidents occurring within three years of the filing of the suit against Thalhimers. Both the evaluation meeting and the probationary meeting occurred within that period. The evaluation meeting was a direct result of the meeting two weeks before be-

tween Loomis, Colvin, and the plaintiff. Further, the plaintiff then produced evidence that the actions of her employer that occurred in December caused her to seek medical attention from two doctors shortly thereafter.

In order to survive the defendants' motion for directed verdict, the plaintiff, in addition to showing the intentional acts of the defendants, was also required to produce evidence of "emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of *severe and disabling* emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Waddle*, 331 N.C. at 83, 414 S.E.2d at 27, quoting *Johnson v. Ruark Obstetrics & Gynecology Assoc.*, 327 N.C. 283, 304, 395 S.E.2d 85, 97, *reh'g denied*, 327 N.C. 644, 399 S.E.2d 133 (1990) (emphasis in original).

Since "[t]he claim [for intentional infliction of emotional distress] exists 'when a defendant's conduct exceeds all bounds usually tolerated by decent society' and the conduct 'causes mental distress of a very serious kind,' " *Hogan*, 79 N.C. App. at 487, 340 S.E.2d at 119; conversely, the tort does not come into existence until the continued conduct of the defendant causes extreme emotional distress. While as defendants point out in their brief, "[p]laintiff was aware of each of the acts of Defendant Colvin at the time it occurred," the plaintiff could not create a cause of action at the time if *no cause of action* had accrued. If she brought suit in September of 1985, having suffered no emotional distress, she might very well have met the same result on summary judgment as the plaintiff in *Waddle*.

Indeed, prior to the plaintiff's visits to medical professionals, she would have been unable to meet the necessarily high standard set forth in *Waddle*. In reversing the Court of Appeals' decision in *Waddle*, the Supreme Court stated that the plaintiff Waddle showed no forecast of severe emotional distress, "any *medical documentation* . . ." or "evidence of 'severe and disabling' psychological problems within the meaning of the test laid down in *Johnson v. Ruark*." 331 N.C. at 85, 414 S.E.2d at 28 (emphasis added). The Court concluded that plaintiff Waddle "failed to forecast sufficient evidence of the 'severe emotional distress' element of the tort . . ." and therefore that summary judgment against the plaintiff was appropriate.

BRYANT v. THALHIMER BROTHERS, INC.

[113 N.C. App. 1 (1993)]

In the case at bar, the defendants argue that the acts of Defendant Colvin that occurred prior to December 1986 are barred by the three-year statute. However, this assertion is premised on the action being complete at the time of each of those events and that the events constituted a separate tort in and of themselves. If all of the elements of the tort were not present, then no cause of action for intentional infliction of emotional distress existed at that time.

As indicated in *Waddle*, actions such as the one in the case *sub judice* often take years to manifest the severe emotional results required to complete the tort. To preclude the evidence of the very actions giving rise to the resulting damage defies common sense. The statutes of limitations serve to bar *claims*, not *evidence* of contributing factors to an ultimate claim that has not yet come into existence. "As our courts have frequently noted, in no event can a statute of limitations begin to run until the plaintiff is entitled to institute action. . . . Ordinarily, the period of the statute of limitations begins to run when *the plaintiff's right* to maintain an action *for the wrong alleged* accrues. The cause of action accrues *when the wrong is complete. . . .*" *Bolick v. American Barmag Corp.*, 54 N.C. App. 589, 594, 284 S.E.2d 188, 191, *decision modified on other grounds*, 306 N.C. 364, 293 S.E.2d 415 (1981) (emphasis in original). Obviously, outrageous conduct by the defendant alone would confer no cause of action on the plaintiff in the case until she suffered extreme emotional distress caused by his actions.

In the instant case, only one cause of action accrued at the time that the actions of the defendant did in fact cause emotional distress of the calibre set out in *Waddle*. Prior to the last few months of the plaintiff's employment, there was insufficient evidence of the third prong of an intentional infliction claim and thus no separate and complete tort. Evidence of the elements of the tort would not be barred by the statute of limitations of G.S. § 1-52(5) unless the elements were part of a completely separate cause of action that was in fact time barred. To parse out the intentional or reckless acts of a defendant due to the statute of limitations, when those acts have not yet caused the damage required to complete the tort, would allow persons to continually harass potential plaintiffs until such time as the emotional damage became severe enough to cause the extreme result, then exclude much of their conduct giving rise to the damage.

Whether certain evidence should be admitted rests in the able hands of the trial court and its application of the Rules of Evidence. In summary, we hold that the trial court properly admitted the evidence of defendants' actions during 1985 and 1986 as evidence of the first element of the tort of intentional infliction of emotional distress. We also hold that, based on the above reasoning, the trial judge's denial of the defendants' motion *in limine* was correct. Accordingly, we overrule the defendants' assignment of error with respect to the pretrial motion. Further, for the same reasons, we hold that the trial court properly instructed the jury on the issues to be decided at trial.

### B.

[2] The defendants also allege that if the statute of limitations does not operate to preclude recovery for events occurring on or before 5 December 1986, then the arguments of the plaintiff's counsel made during pretrial hearings constitute judicial admissions and serve to limit the cause of action to the later events. We disagree and accordingly overrule this assignment of error.

"A judicial admission is a formal concession which is made by a party in the course of litigation for the purpose of withdrawing a particular fact from the realm of the dispute." *Outer Banks Contractors, Inc. v. Forbes*, 302 N.C. 599, 604, 276 S.E.2d 375, 379 (1981). "Such an admission is not evidence, but it, instead, serves to remove the admitted fact from the trial by formally conceding its existence." *Id.* A stipulation as to the law is not binding on the parties or the court. *State ex rel. Carringer v. Alverson*, 254 N.C. 204, 118 S.E.2d 408 (1961). Generally, admissions are "ordinarily made by a pleading [or lack thereof], or by a response [or failure to respond] to a pretrial demand for admissions, or by stipulation entered into before or at trial." 2 Henry Brandis, Jr., *Brandis on North Carolina Evidence* § 166 (2d ed. 1982); *see also* § 171. "[I]n the absence of express authority, an attorney generally has no power, by stipulation, agreement, or otherwise, to waive or surrender the substantial legal rights of his client . . . ." *Bailey v. McGill*, 247 N.C. 286, 100 S.E.2d 860 (1957) (counsel's statements that he did not rely on a theory stated in the complaint where the complaint alleged only that theory was not binding on party).

The defendants argue that the statements made to the trial court by plaintiff's counsel during the summary judgment hearing had the effect of constituting an admission. The attorney's statements

all concerned the legal effect of the statute of limitations on their client's claim. Specifically, the attorneys told the trial judge repeatedly that they were not attempting to recover for damages arising out of events that occurred prior to the three-year statutory proscription.

Notwithstanding the resolution of this issue that appears in Part A of this opinion, those statements made by counsel during summary judgment arguments were not judicial admissions and were not binding on the plaintiff in the subsequent action. The statements were not formal concessions nor were they intended to withdraw a particular fact from the realm of dispute. Rather, the comments were intended to respond to the court's questions regarding the defendants' summary judgment motion. "Stipulations will receive a reasonable construction so as to effect the intentions of the parties, but in ascertaining the intentions of the parties, the language employed in the agreement will not be construed in such a manner that a fact which is obviously intended to be controverted is admitted or that a right which is plainly not intended to be waived is relinquished." *Outer Banks*, 302 N.C. at 605, 276 S.E.2d at 380.

We hold that these principles of law apply in the instant case, and that statements of counsel did not constitute admissions to be used against the plaintiff in the subsequent trial. We accordingly overrule this assignment of error.

## II.

[3] Defendants contend in their fourth assignment of error that even assuming *arguendo* that the conduct of the defendants was not excluded by the statute of limitations; as a matter of law, there was insufficient evidence to establish the plaintiff's claim for intentional infliction of emotional distress. They further argue that the evidence does not support the claim that Thalhimers ratified the acts of Defendant Colvin and therefore Thalhimers could not be held liable for his actions. We find this argument without merit and accordingly affirm the trial court's decision.

As indicated in Part I of this opinion, there was ample evidence presented at trial from which the jury could reasonably determine that Colvin's acts were extreme and outrageous, and that his actions intended to cause the plaintiff emotional distress. As pointed out in *Brown v. Burlington Industries, Inc.*, 93 N.C. App. 431,

436, 378 S.E.2d 232, 235 (1989), *disc. review improvidently allowed*, 326 N.C. 356, 388 S.E.2d 769 (1990), "once conduct is shown which may be reasonably regarded as extreme and outrageous, it is for the jury to determine, upon proper instruction, whether the conduct complained of is, in fact, sufficiently extreme and outrageous to result in liability."

Further, as to the defendants' contention that the plaintiff failed to produce sufficient evidence of defendants' intent, as noted earlier, the claim for intentional infliction of emotional distress may also lie where the defendant's actions indicate a reckless indifference to the likelihood that they will cause emotional distress to the plaintiff.

Likewise, we find that the record indicates that the plaintiff testified regarding repeated conversations with various supervisory personnel along the management chain at Thalhimers and that as early as 1985 reported to the personnel manager that Colvin was harassing her. She stated that discussions she thought were held in confidence were reported to Colvin. She further testified that "nothing was done" during the subsequent eighteen months that she worked for Thalhimers. Testimony also indicated that supervisors told her that complaints of that nature were not welcome from employees. "The jury may find ratification from any course of conduct on the part of the principal which reasonably tends to show an intention on his part to ratify the agent's unauthorized acts. Such course of conduct may involve an omission to act." *Brown* at 437, 378 S.E.2d at 236 (citations omitted).

We find that the trial court correctly sent the case to the jury and was also correct in accepting its verdict. Ample evidence was presented to the jury on the issues of conduct, intent, and ratification by Colvin and his employer to establish a *prima facie* case of intentional infliction of emotional distress. We accordingly affirm the trial court's decision and overrule this assignment of error.

### III.

[4] In their fifth assignment of error, defendants appeal the trial court's denial of their motions for mistrial and a new trial. They contend that the verdict was rendered by a ten-person jury thereby denying their client's constitutional right to a jury of twelve persons. Alternatively, they argue that the misconduct of the plaintiff's counsel that resulted in the elimination of two of the jurors was

grounds for a mistrial and new trial. We find no error in the trial court's decision.

Defendants admit in their brief to this Court that the trial judge on the first morning of the trial before any evidence was presented "inquired of counsel for both parties as to whether they would agree to a jury down to ten persons and the counsel for both parties agreed." However, they argue that the agreement by defendants to a jury of ten persons was in order to allow the trial to proceed in the event of illness or emergency of jurors, an "innocent reason", rather than because two jurors read newspaper reports regarding evidence excluded by pretrial motion. They contend that plaintiff's counsel intentionally "leaked" information to the press after pretrial motions hearings, and that information was in turn inaccurately reported by the Winston-Salem Journal, and the jurors reading the newspaper article (who were excused by the trial court) inherently tainted the entire trial proceedings.

We do not agree with this argument. The disputed newspaper article reported that "[i]n pretrial motions, McGuire and lead counsel Charles Roberts asked Judge James A. Beaty, Jr. to prevent Mrs. Bryant's attorneys from using evidence that they say will show Colvin was sexually involved with other women at other Thalhimers stores in North Carolina. Beaty ruled that no such evidence could be introduced unless . . . [the plaintiff's counsel] can show it is relevant." The article continued with a report of the plaintiff's first day of testimony.

The defendants argued to the trial judge that plaintiff's counsel told the reporter the basis of the excluded evidence even though the defendants were aware that the motions were argued in open court the previous day and that those motions were a part of the public record. Plaintiff's counsel denied the allegation and stated that he had only told the reporter that the motion was granted. The trial court polled the jury with regard to the newspaper article and determined that two jurors who had read the article should be excused. Those jurors were excused over the defendants' objection.

During the discussions following the trial court's questioning of the jury, counsel for the defendants stated to the trial court that they "would prefer to proceed with the full jury than to have it reduced by either of those gentlemen," even though admittedly they had stipulated to a jury of less than twelve. However, they requested that they be allowed to withdraw their stipulation because

BRYANT v. THALHIMER BROTHERS, INC.

[113 N.C. App. 1 (1993)]

the loss of the two male jury members was the result of an alleged violation of ethical rules by plaintiff's counsel. We do not feel that an agreement to have a verdict by less than twelve jurors should depend on whether the jurors are excused by the court for an "innocent" reason or a so called "guilty" reason. The purpose of a jury trial is to ensure that the issues are fairly decided for all parties; it appears here that the actions of plaintiff's counsel, while not approved by this Court, did not jeopardize the proceedings.

"[A] trial judge in a civil case has the power, in his discretion, to order a mistrial at any time before the verdict is returned." *Elks v. Hannan*, 68 N.C. App. 757, 758, 315 S.E.2d 553, 554 (1984). Additionally, "[t]he granting or denial of a motion for a new trial . . . is generally regarded as resting within the sound discretion of the trial judge, and his ruling will not be disturbed on appeal in the absence of a manifest abuse of such discretion, or as sometimes stated, unless it is clearly erroneous." *Stone v. Griffin Baking Co.*, 257 N.C. 103, 105, 125 S.E.2d 363, 365 (1962). In the instant case, the trial court individually polled all the jurors before concluding that the trial could proceed fairly with the ten remaining jurors. He further ensured that those remaining on the jury were made aware of their responsibility to render a fair and impartial decision through curative instructions at the close of the evidence. Based on our review of the record, we find no abuse of discretion by the trial judge in refusing the motions for a mistrial and a new trial.

We have reviewed the defendants' remaining assignments of error and find no merit in those contentions.

No error.

Judges WELLS and GREENE concur.