BELINDA DALE RUFF, Plaintiff v. REEVES BROTHERS, INC., a Delaware Corporation; JAMES PROCTOR; SANDY ARROWOOD; ROY KNICK; TERRY ANDERS; AARON "BUD" BYERS; CHARLES MARTIN; FRED FIGGERS; HARRY WATERS; and DONALD SANE, Defendants

No. COA95-596

(Filed 16 April 1996)

## Intentional Infliction of Mental Distress § 2 (NCI4th)— intentional and negligent infliction of emotional distress—jury question—action not barred by statute of limitations

Plaintiff's forecast of evidence in an action for the intentional infliction of emotional distress created a genuine issue of material fact as to whether defendant Martin's behavior was so extreme

**RUFF v. REEVES BROTHERS, INC.**

[122 N.C. App. 221 (1996)]

or outrageous so as to result in serious emotional harm where it tended to show that defendant, a co-worker of plaintiff, held plaintiff's arms while another co-worker pulled up plaintiff's shirt and bra; defendant stated that he would like to have sex with plaintiff on a satellite dish; defendant told plaintiff that he had had sex with a woman on a riding lawn mower; defendant and another person pulled plaintiff's legs apart, stating that they were going to "eat" her; and there were other incidents at work of a non-sexual nature which occurred at various unspecified times. Furthermore, plaintiff's cause of action did not accrue until October 1989 when plaintiff's severe emotional distress manifested itself and she was placed in the care of a psychologist and a psychiatrist, and this action against defendant Martin, filed in February 1992, was therefore not barred by the statute of limitations.

**Am Jur 2d, Fright, Shock, and Mental Disturbance §§ 4 et seq., 17.**

**Liability of employer, supervisor, or manager for intentionally or recklessly causing employee emotional distress. 52 ALR4th 853.**

Appeal by plaintiff from Order entered 30 December 1994 by Judge Zoro J. Guice, Jr. in Rutherford County Superior Court. Heard in the Court of Appeals 27 February 1996.

*Leonard & Biggers, P.A., by William T. Biggers, and Roberts, Stevens & Cogburn, P.A., by Frank P. Graham, for plaintiff-appellant.*

*Bridges, Gilbert & Foster, P.A., by Gwynn Radeker, for defendant-appellee Charles Martin.*

JOHNSON, Judge.

From 1988 to 1990, plaintiff Belinda Dale Ruff was employed by defendant Reeves Brothers, Inc. in the Vulcanizing Department of the Grace Plant, which is located in Rutherford County, North Carolina. Plaintiff was the only female in the department, where her job as a stripper consisted of stripping rubber from large drums. Defendant James Proctor was her immediate supervisor and other employees in the department included defendants Sandy Arrowood, Terry Anders, Aaron "Bud" Byers, Charles Martin and Donald Sane.

**RUFF v. REEVES BROTHERS, INC.**

[122 N.C. App. 221 (1996)]

On 6 February 1992, plaintiff instituted this action against her employer, Reeves Brothers, Fred Figgers, the plant manager, Roy Knick, the assistant plant manager, Harry Waters, the plant human resources director, James Proctor, her immediate supervisor, and co-workers, Sandy Arrowood, Terry Anders, Aaron "Bud" Byers, Donald Sane, and Charles Martin, alleging intentional and negligent infliction of emotional distress. Plaintiff's deposition was taken in the summer of 1994, in preparation for trial. Thereafter, defendant Charles Martin made a Motion for Summary Judgment stating, "As shown on the face of the Complaint and as described in Plaintiff's testimony in oral deposition[,] any alleged acts committeda [sic] aginst [sic] [plaintiff] by the Defendant Charles Martin occurred more than three years prior to the filing of the Plaintif's [sic] action against said Defendant." This motion was heard by Judge Zoro J. Guice, Jr. on 2 December 1994.

The plaintiff's forecast of evidence, as presented to the trial court, tended to show the following. Plaintiff began to experience harassment and unwanted attention of a sexual nature from the men in the Vulcanizing Department, after she separated from her husband in December 1988. Defendant Martin was originally plaintiff's friend but, subsequently, his relationship with plaintiff changed. One of the acts of harassment, in which defendant Martin was alleged to have participated, was stated in plaintiff's Complaint to have occurred in the summer of 1989. It was later determined, however, that this particular act had in fact occurred in the fall of 1988—more than three years before this action was commenced. There were other incidents, alleged to have occurred on various *unspecified* occasions in plaintiff's Complaint and deposition, in which defendant Martin had participated. These acts of harassment continued until 1990, when plaintiff was laid off.

Plaintiff complained about these incidents to her supervisor and the plant management on a regular basis, to no avail. According to plaintiff, in October 1989, after defendant Arrowood had exposed himself to her, she was summoned to the plant human resources director's office where she was confronted by defendant Waters, who asked plaintiff, "What the hell is wrong with you? How much more do I owe you[?] I brought them in and fussed with them. Do you want Sandy Arrowood's job[?]" In response, plaintiff hyperventilated and fainted. Plaintiff was then taken to Spindale Family Practice where she was seen by Dr. Guyton Winker. Thereafter, plaintiff was referred to Woodridge Psychological Associates, P.A., where she was placed

under the care of Dr. H. Dean Perry, II, a psychologist, and Dr. C. Phillip Stevenson, a psychiatrist. At the time of the 2 December hearing, plaintiff remained under the treatment of Dr. Perry and Dr. Stevenson.

After hearing the evidence, Judge Guice, on 30 December 1994, entered an Order of Summary Judgment for defendant Martin, dismissing with prejudice plaintiff's claim against defendant Martin. Plaintiff appeals.

At the outset, we must note that the Order granting defendant Martin's Motion for Summary Judgment is interlocutory since other defendants remain in this action. An interlocutory order is not ordinarily appealable. *Teachy v. Coble Dairies, Inc.*, 306 N.C. 324, 293 S.E.2d 182 (1982), *quoted in Jenkins v. Wheeler*, 69 N.C. App. 140, 316 S.E.2d 354, *disc. review denied*, 311 N.C. 758, 321 S.E.2d 136 (1984). However, as "multiple trials against different members of the same allegedly collusive group could result from dismissal of this appeal," *Jenkins*, 69 N.C. App. at 142, 316 S.E.2d at 356, we find that the Order affected a substantial right of plaintiff and will cause substantial injury to her if not addressed before an appeal from the final judgment. *See Jenkins*, 69 N.C. App. 140, 316 S.E.2d 354; *see also Plummer v. Kearney*, 108 N.C. App. 310, 423 S.E.2d 526 (1992) (explaining that there is a substantial right where the dismissal involves issues which overlap those addressed in the action against the remaining parties). Thus, the trial court's Order granting defendant Martin's Motion for Summary Judgment and dismissing plaintiff's action against him is immediately appealable. N.C. Gen. Stat. § 1-277 (1983); *Jenkins*, 69 N.C. App. 140, 316 S.E.2d 354.

On appeal, plaintiff brings forth two assignments of error which both, in essence, question the propriety of the trial court's grant of defendant Martin's Motion for Summary Judgment. Initially, we will address plaintiff's second assignment of error—that the trial court erred in granting defendant's Motion for Summary Judgment.

Summary judgment is properly granted under North Carolina General Statutes section 1A-1, Rule 56(c) when the pleadings, depositions, answers to interrogatories, and admissions on file, along with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party to the action is entitled to a judgment as a matter of law. *Davis v. Town of Southern Pines*, 116 N.C. App. 663, 665, 449 S.E.2d 240, 242 (1994), *disc. review denied*, 339 N.C. 737, 454 S.E.2d 648 (1995); N.C. Gen. Stat. § 1A-1, Rule 56 (1990). An

**RUFF v. REEVES BROTHERS, INC.**

[122 N.C. App. 221 (1996)]

issue is deemed to be material if " 'the facts alleged would constitute a legal defense, or would affect the result of the action, or if its resolution would prevent the party against whom it is resolved from prevailing in the action.' " *Northwestern Bank v. Gladwell*, 72 N.C. App. 489, 493, 325 S.E.2d 37, 40 (1985) (quoting *Koontz v. City of Winston-Salem*, 280 N.C. 513, 518, 186 S.E.2d 897, 901, *reh'g denied*, 281 N.C. 516 (1972)). Once the moving party has made and supported its motion for summary judgment, section (e) of Rule 56 provides that the burden is then shifted to the non-moving party to introduce evidence in opposition to the motion, setting forth "specific facts showing that there is a genuine issue for trial." N.C. Gen. Stat. § 1A-1, Rule 56(e); *Amoco Oil Co. v. Griffin*, 78 N.C. App. 716, 718, 338 S.E.2d 601, 602, *disc. review denied*, 316 N.C. 374, 342 S.E.2d 889 (1986). At this time, the non-movant must come forward with a forecast of his own evidence. *Amoco Oil*, 78 N.C. App. at 718, 338 S.E.2d at 602.

In order to maintain an actionable claim for intentional infliction of emotional distress, one must prove the following: (1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress. *Dickens v. Puryear*, 302 N.C. 437, 276 S.E.2d 325 (1981). In *Hogan v. Forsyth Country Club Company*, this Court extended a claim of infliction of emotional distress to include that which arises as a result of one's reckless indifference to the likelihood that one's actions will cause severe emotional distress. 79 N.C. App. 483, 340 S.E.2d 116, *disc. review denied*, 317 N.C. 334, 346 S.E.2d 140 (1986). Extreme and outrageous conduct has been defined as that " 'conduct which exceeds all bounds usually tolerated by decent society.' " *Stanback v. Stanback*, 297 N.C. 181, 196, 254 S.E.2d 611, 622 (1979) (quoting Prosser, *The Law of Torts* § 12, at 56 (4th ed. 1971)), *quoted in Dickens*, 302 N.C. at 447, 276 S.E.2d at 331. Our Court has previously stated,

> It is a question of law for the court to determine, from the materials before it, whether the conduct complained of may reasonably be found to be sufficiently outrageous as to permit recovery . . . However, once conduct is shown which may be reasonably regarded as extreme and outrageous, it is for the jury to determine, upon proper instructions, whether the conduct complained of is, in fact, sufficiently extreme and outrageous to result in liability.

*Brown v. Burlington Industries, Inc.*, 93 N.C. App. 431, 436, 378 S.E.2d 232, 235 (1989), *disc. review dismissed*, 326 N.C. 356, 388

S.E.2d 769 (1990); (quoting *Hogan*, 79 N.C. App. at 490-91, 340 S.E.2d at 121). Further, in *Waddle v. Sparks*, our Court established the level of evidence sufficient to show severe emotional distress in the context of an action for intentional and/or negligent infliction of emotional distress:

> the term "severe emotional distress" means any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of *severe and disabling* emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so.

331 N.C. 73, 83, 414 S.E.2d 22, 27 (1992). The statute of limitations for the tort of intentional infliction of emotional distress is three years. *Dickens*, 302 N.C. at 442, 276 S.E.2d at 330. Moreover, section 1-15 of the North Carolina General Statutes provides that a civil action may only be commenced after the cause of action has accrued. N.C. Gen. Stat. § 1-15 (1983).

In the instant case, defendant filed a Motion for Summary Judgment, alleging that he was entitled to such, since plaintiff's claim was barred by the statute of limitations. Our Court has previously stated, " '[o]nce a defendant has properly pleaded the statute of limitations, the burden is then placed upon the plaintiff to offer a forecast of evidence showing that the action was instituted within the permissible period after the accrual of the cause of action.' " *Waddle*, 331 N.C. at 85-6, 414 S.E.2d at 28-9 (quoting *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985), and citing *Little v. Rose*, 285 N.C. 724, 208 S.E.2d 666 (1974)). Plaintiff, then, bore the burden of showing that her action was brought within the three-year statute of limitations that applies to an intentional and/or negligent infliction of emotional distress claim.

In the case *sub judice*, plaintiff presented a forecast of evidence which tended to show that defendant Martin engaged in the following acts of sexual harassment:

1.  In the fall of 1988—more than three years before this action was commenced—defendant Martin held plaintiff's arms while defendant Arrowood pulled plaintiff's bra and shirt up.

2.  On an unspecified occasion, defendant Martin stated that he would like to have sex with plaintiff on a satellite dish.

3.  On another unspecified occasion, defendant Martin told plaintiff that he had had sex with a woman on a riding lawn mower.

4.  On yet another unspecified occasion, defendant Martin and defendant Arrowood pulled plaintiff's legs apart, stating that they were going to "eat" her.

Moreover, there were other incidents of a non-sexual nature, which occurred at various unspecified occasions, involving defendant Martin: (1) horseplay during which rubber pieces where thrown at and amongst members of plaintiff's department; (2) employees, including defendant Martin, drinking on the job; (3) defendant Martin placing mayonnaise or grease in plaintiff's gloves; (4) defendant Martin and three other employees telling plaintiff that "she'd got so low she'd come to a black person"; (5) defendant Martin "shooting a birdie" at plaintiff outside of the plant; and (6) defendant Martin calling plaintiff a deadbeat and unfit mother. These incidents culminated in plaintiff's hyperventilating and passing out in October 1989, resulting in plaintiff being placed in the care of a psychologist and a psychiatrist.

The facts in the instant case are quite similar to those found in *Bryant v. Thalhimer Brothers, Inc.*, 113 N.C. App. 1, 437 S.E.2d 519 (1993), *appeal dismissed and disc. review denied*, 336 N.C. 71, 445 S.E.2d 29 (1994), and defendant Martin's attempts to distinguish the two cases are unpersuasive. In *Bryant*, as we must in the case at bar, this Court found that the tort of intentional infliction of emotional distress "does not come into existence until the continued conduct of the defendant causes extreme emotional distress," 113 N.C. App. at 12, 437 S.E.2d at 525, and further that "[i]f all of the elements of the tort were not present, then no cause of action for intentional infliction of emotional distress existed at that time." *Id.* at 13, 437 S.E.2d at 526. "As our courts have frequently noted, '[i]n no event can a statute of limitations begin to run until the plaintiff is entitled to institute [an] action. . . . Ordinarily, the period of the statute of limitations begins to run when *the plaintiff's right* to maintain an action *for the wrong alleged* accrues. The cause of action accrues *when the wrong is complete. . . .*'" *Bolick v. American Barmag Corp.*, 54 N.C. App. 589, 594, 284 S.E.2d 188, 191 (1981), *decision modified on other grounds*, 306 N.C. 364, 293 S.E.2d 415 (1982) (quoting *Raftery v. Construction Co.*, 291 N.C. 180, 183-4, 230 S.E.2d 405, 407 (1976)). In *Bryant*, as in the instant action, the plaintiff's cause of action did not accrue until the actions of the defendant did, in fact, cause severe emotional distress.

**RUFF v. REEVES BROTHERS, INC.**

[122 N.C. App. 221 (1996)]

In this case, prior to the October 1989 incident in the plant human resources director's office, there was insufficient evidence of the third prong of the intentional infliction claim and, therefore, no separate and complete tort was present prior to that time. Further, this Court has previously stated, "[e]vidence of the elements of the tort would not be barred by the statute of limitations in section 1-52(5) unless the elements were part of a completely separate cause of action that was in fact time barred." *Bryant*, 113 N.C. App. at 13, 437 S.E.2d at 526. As the Court sagely noted in *Bryant*, "[t]o parse out the intentional or reckless acts of a defendant due to the statute of limitations, when those acts have not yet caused the damage required to complete the tort, would allow persons to continually harass potential plaintiffs until such time as the emotional damage became severe enough to cause the extreme result, then exclude much of their conduct giving rise to the damage." *Id.*

We find that plaintiff's evidence does create a genuine issue of material fact as to whether defendant Martin's behavior was so extreme or outrageous, so as to result in serious emotional harm. Accordingly, the question of defendant's liability for his behavior is a matter for the jury to decide. *Brown*, 93 N.C. App. at 436, 378 S.E.2d at 235; *Hogan*, 79 N.C. App. at 491, 340 S.E.2d at 121. Further, we also find, as we did in *Bryant*, that plaintiff's cause of action did not accrue until October 1989 when plaintiff's severe emotional distress manifested itself, and therefore, this action against defendant Martin, filed in February 1992, is not barred by the statute of limitations. As such, the trial court erred in granting defendant's Motion for Summary Judgment.

In light of this determination, the trial court's finding that plaintiff could not sustain a claim for relief against defendant Martin was also error. Consequently, the trial court's decision must be reversed.

Reversed.

Judges MARTIN, JOHN C. and McGEE concur.