JOANN W. WADDLE AND JACQUELINE E. SIMPSON v. JACK SPARKS AND GUILFORD MILLS, INC.

No. 476A90

(Filed 5 March 1992)

1. **Rules of Civil Procedure § 56.3 (NCI3d) — summary judgment — proof of nonexistence of essential element**

    Summary judgment is properly entered in the movant's favor if the movant establishes that an essential part or element of the opposing party's claim is nonexistent. Therefore, in order to overcome defendants' motions for summary judgment, plaintiffs must forecast sufficient evidence of all essential elements of their claims.

    **Am Jur 2d, Summary Judgment § 26.**

2. **Trespass § 2 (NCI3d) — intentional infliction of emotional distress — elements**

    The essential elements of an action for intentional infliction of emotional distress are (1) extreme and outrageous conduct by the defendant (2) which is intended to and does in fact cause (3) severe emotional distress.

    **Am Jur 2d, Fright, Shock, and Mental Disturbance §§ 4-7.**

3. **Trespass § 2 (NCI3d) — intentional infliction of emotional distress — meaning of severe emotional distress**

    The standards for determining the element of severe emotional distress in actions for the intentional infliction of emotional distress and the negligent infliction of emotional distress are the same. Therefore, the term "severe emotional distress" in an action for the intentional infliction of emotional distress means any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so.

    **Am Jur 2d, Fright, Shock, and Mental Disturbance §§ 3, 4, 47, 51.**

WADDLE v. SPARKS

[331 N.C. 73 (1992)]

4. **Trespass § 2 (NCI3d)— intentional infliction of emotional distress — insufficient forecast of evidence of severe emotional distress**

Plaintiff's forecast of evidence failed to show that she has suffered the severe emotional distress necessary to maintain her cause of action against her former supervisor for intentional infliction of emotional distress based on sexually suggestive comments and offensive actions where plaintiff stated during her deposition that she had not seen a psychiatrist or psychologist since well before the events comprising her lawsuit; plaintiff stated that the only time she had taken "nerve pills" prescribed by her doctor for a protracted period of time was during episodes of family-related stress due to problems with her mother and daughter; plaintiff stated that the only time she missed work was when her mother was hospitalized and again when her teenage daughter eloped; and there was no forecast of any medical documentation of plaintiff's alleged "severe emotional distress" and no forecast of evidence of "severe and disabling" psychological problems.

**Am Jur 2d, Fright, Shock, and Mental Disturbance §§ 8-10, 12.**

5. **Rules of Civil Procedure § 56.4 (NCI3d)— statute of limitations — defendants' summary judgment motions — burden on plaintiff**

Where defendants pleaded the statute of limitations as a defense to plaintiff's claim for the intentional infliction of emotional distress and relied on it in their separate motions for summary judgment, plaintiff was required to produce a forecast of evidence of specific acts which took place within three years prior to the filing of her complaint in order to sustain her claim over defendants' summary judgment motions.

**Am Jur 2d, Limitation of Actions § 470; Summary Judgment §§ 26, 27.**

6. **Trespass § 2 (NCI3d)— intentional infliction of emotional distress — summary judgment — statute of limitations**

Summary judgment was properly entered against the second plaintiff on her claim against her former supervisor for intentional infliction of emotional distress because her forecast of evidence failed to show that any conduct of defendant oc-

WADDLE v. SPARKS

[331 N.C. 73 (1992)]

curred within the applicable three-year statute of limitations where she was unable to state during her deposition a date, even within a year, when any one of the various specific incidents she alleged against defendant occurred.

**Am Jur 2d, Limitation of Actions § 470; Summary Judgment §§ 26, 27.**

7. **Master and Servant § 29 (NCI3d)— negligent retention of supervisor—insufficient forecast of evidence**

Summary judgment in favor of defendant employer was proper on plaintiffs' claims for negligent retention of their former supervisor where the only tort at issue against the supervisor was intentional infliction of emotional distress, and plaintiffs' forecasts of evidence were insufficient to sustain their claims against the supervisor for this tort.

**Am Jur 2d, Summary Judgment §§ 26, 27.**

**Liability of employer, supervisor, or manager for intentionally or recklessly causing employee emotional distress. 52 ALR4th 853.**

Justice LAKE did not participate in the consideration or decision of this case.

ON appeal of right by defendants pursuant to N.C.G.S. § 7A-30(2) and on discretionary review of additional issues pursuant to N.C.G.S. § 7A-31(a), from the decision of a divided panel of the Court of Appeals, 100 N.C. App. 129, 394 S.E.2d 683, reversing summary judgment against plaintiff Waddle and affirming summary judgment against plaintiff Simpson, the judgments having been rendered on 15 June 1989 in Superior Court, GUILFORD County, *Walker (Ralph A.), J.,* presiding. Heard in the Supreme Court on 8 April 1991.

*Ling & Farran, by Jeffrey P. Farran, for plaintiff-appellee Joann W. Waddle and plaintiff-appellant Jacqueline E. Simpson.*

*Haines, Short, Campbell & Ferguson, by W. Marcus Short, for defendant Jack Sparks.*

**WADDLE v. SPARKS**

[331 N.C. 73 (1992)]

*Smith, Helms, Mullis & Moore, by Martin N. Erwin and Michael A. Gilles, for defendant Guilford Mills, Inc.*

*Harvey L. Kennedy and Harold L. Kennedy, III, for the North Carolina Academy of Trial Lawyers, Amicus Curiae.*

EXUM, Chief Justice.

Plaintiffs' complaint, filed 20 April 1988, alleges intentional and negligent infliction of emotional distress against defendant Jack Sparks and negligent hiring and retention of Sparks by defendant Guilford Mills, Inc. On 24 April and 26 April 1989, defendants, respectively, filed motions for summary judgment as to all plaintiffs' claims. The trial court granted these motions on 15 June 1989. Plaintiffs appealed the summary judgments entered against them on their intentional infliction of emotional distress claims against Sparks and their negligent retention claims against Guilford Mills to the Court of Appeals.[1] A divided panel of the Court of Appeals reversed the summary judgments entered in favor of both defendants as to plaintiff Waddle. 100 N.C. App. 129, 394 S.E.2d 683 (1990) (Lewis, J., dissenting). The Court of Appeals unanimously affirmed the summary judgments entered in favor of both defendants as to plaintiff Simpson. *Id.* Defendants appealed to this Court on the basis of Judge Lewis' dissent. Both defendants petitioned for discretionary review of additional issues which were raised in, but not addressed by, the Court of Appeals. Plaintiff Simpson also petitioned for discretionary review. The Court allowed all petitions on 10 January 1991.

The questions before us are, on defendants' appeal, whether the Court of Appeals erred in reversing summary judgments in their favor on plaintiff Waddle's claim for intentional infliction of emotional distress against Sparks and negligent retention against Guilford Mills; and on plaintiff Simpson's petition for discretionary review, whether the Court of Appeals erred in affirming summary judgments for both defendants on her claims resting on these same

---

1. Plaintiffs did not challenge in the Court of Appeals the summary judgments against them on their negligent infliction of mental distress and negligent hiring claims. They further acknowledged during oral arguments here that they had abandoned their claims for negligent infliction of emotional distress. Plaintiff Simpson also failed to present these issues in her petition for discretionary review. Pursuant to Appellate Procedure Rule 28(a) assignments of error relating to these claims have not been preserved on appeal and are therefore deemed abandoned.

torts. We conclude the Court of Appeals should have affirmed summary judgments entered for defendants as to both plaintiffs on both claims. Because of this conclusion we need not address the various additional issues raised by the parties in their petitions for discretionary review.

I.

The trial judge considered several documents propounded by the parties in determining that defendants' motions for summary judgment on all claims should be granted. Among these were the pleadings, the depositions of each plaintiff and of defendant Jack Sparks, defendants' responses to requests for admissions and, finally, a summarized version of an attitude survey of employees working under defendant Sparks taken by defendant Guilford Mills. Taken in the light most favorable to each plaintiff, the following facts can be gleaned from these documents.

Joann Waddle began working for defendant Guilford Mills, Inc. in 1970. In early 1983, defendant Jack Sparks became the third-shift supervisor of the Knitting Department in Guilford Mills' Wendover plant. In this position Sparks was plaintiff Waddle's direct supervisor.

In 1984, defendant Guilford Mills took an attitude survey of the employees under defendant Sparks' supervision. The survey tended to show that Sparks was not well liked by the employees working on his shift. A report of the survey stated that

[s]ome employees feel Sparks is vicious and "likes to stir people up," while others think it's his idea of "humor." In any event, its [sic] causing problems and largely of this supervisor's own making. The mix, particularly among women, ranges from fear to anger, with Sparks viewed as "the most vindictive egocentric person in the plant." Even when things are "mentioned to Jack that he can and should correct, he gets so profane and angry that we're afraid to mention anything that needs attention." . . . The situation in this department would be radically improved if Sparks were reclaimed, recycled or removed.

Quotations from the above survey are apparently direct quotes of department employees.

WADDLE v. SPARKS

[331 N.C. 73 (1992)]

Waddle's deposition was taken on 16 August 1988. During her deposition Waddle testified that sometime in 1983 Sparks brushed his arm against her breast while she was working on a clipboard. Although Waddle initially felt the brushing incident was an accident, she stated that a similar occurrence happened the next week and she began to suspect it was deliberate. The actual touching occurred only twice; however, Waddle testified that she had to step away from Sparks on several more occasions in order to avoid similar attempts. The last time she had to avoid these attempts "was about 1984." Plaintiff acknowledged, "I wasn't worried about his brushing up against me because I knew I could get away from him if he tried anything." She further acknowledged in her deposition that any acts of a sexual nature, except "dirty talk," occurred within the first six months or a year that Sparks supervised her (i.e., in 1983 and 1984).

In its opinion, the Court of Appeals outlined specific allegations of Waddle against Sparks which it gleaned from Waddle's deposition. It believed the following allegations could potentially support her claim of intentional infliction of mental distress (paraphrased except where quoted from the Waddle deposition):

1. In 1983 Sparks brushed up against plaintiff's breast; however, Waddle acknowledged she was not worried about these attempts because of her ability to dodge them.

2. In March, 1985, a male employee was cleaning and greasing a knitting machine. A female employee approached the machine and said "Bill, you have not greased the balls." Another female employee present at the scene then said to Sparks "Jack, listen over here. Frances is worried about whether Bill's greased his balls or not." Sparks responded to her "What are you worrying about Bill's balls for?" Waddle was not involved in this exchange, although she did overhear the conversation.

3. Sometime in either March or April, 1985, Waddle and Sparks were examining some fabric together. Waddle commented to Sparks that the fabric "has four holes the way its [sic] supposed to." According to Waddle, Sparks responded by asking, "[D]o you have four holes? I bet you know how to use all four of them don't you?"

4. In the fall of 1985, Waddle approached Sparks for some medicine for an infected cut on her finger which was oozing

pus. Sparks asked Waddle how she knew it was infected. Waddle stated "it's red and it's swollen and it's got pus in it." Sparks started laughing and asked another employee to take care of plaintiff. Sparks then said "Yeah, Joann's got a pussy finger. Walt's going to have to work on Joann's pussy." Sparks then got up from his desk laughing even harder and said "I'd better leave on this one. I can't stand it anymore." As Sparks was leaving, another employee approached the office. Sparks stopped him and Waddle allegedly overheard Sparks tell the person "You can't go in there. Walt's working on Joann's pussy finger." Waddle stated that Sparks paused between the words "pussy" and "finger."

Plaintiff has also alleged in her complaint that defendant Sparks "frequently and constantly used dirty or obscene language of a sexual nature." During her deposition, Waddle was pressed for details about incidents at which Sparks used such sexually suggestive comments. Waddle responded that she bought a watch for her father around Christmas 1984 and that one day she brought the watch with her to work. When she showed the watch to Sparks, he responded "Well, that's nice." Sparks then turned around and commented to another employee "Yeah, I guess one of her boyfriends gave it to her." This incident and those already mentioned are the only specific, sexually suggestive comments made by Sparks, as recounted in Waddle's deposition. Waddle did say during her deposition that, throughout her employment on Sparks' shift, he frequently used offensive and vulgar language. She stated that defendant "always threw cuss words in every sentence he said."

In "the early part of the fall" of 1985, Waddle complained to plant manager John Moffitt and assistant plant manager Ed Gray regarding Sparks' alleged unfair treatment of her as compared to other employees. During the meeting Moffitt left to go to another meeting. After Moffitt left, she told Gray about Sparks' excessive use of dirty language, saying that Sparks "used G.D. all the time and the 'f' word." She acknowledged not telling Gray about the touching incidents in 1983 and 1984, and she did not tell Gray about any incidents where Sparks had used sexually suggestive remarks.

"[I]n the later part of the fall" of 1985, Waddle complained to personnel manager Brenda Shelton about Sparks. The thrust of her complaints involved Sparks giving other employees special

treatment at her expense. Waddle also mentioned that Sparks had a "filthy mouth." When Shelton asked if Waddle had ever spoken to Sparks about his language, plaintiff told Shelton that she had but that "you can't talk to him. The man's crazy. . . . Every time you try to talk to him, he makes something dirty out of it or he uses cuss words—dirty words. . . . You can't talk to him. It's impossible." Waddle testified that Shelton replied "Well, sex should never enter into the workplace." When pressed for details about those incidents when Sparks had "talked dirty," Waddle testified that she could not "remember telling her [Shelton] anything specific."

Waddle attempted to persuade Shelton to go to the plant and speak to other employees to verify Waddle's complaints. Shelton thought it would be a bad idea because it "would be too obvious" to Sparks what was going on. Instead Shelton encouraged plaintiff to get some of her co-workers to bring their complaints directly to Shelton's office. Shelton attempted to assure Waddle that she would see "anybody that wants to talk." Waddle, however, was apprehensive about getting into trouble if she encouraged others to talk to Shelton. Waddle also begged Shelton to keep Waddle's name out of any conversations Shelton might have with Moffitt, Gray or Sparks, fearing that the three would retaliate against her.

Defendant Jack Sparks' deposition was taken on 9 December 1987 during the discovery period of another case not involving the present plaintiffs. In that deposition, which Judge Walker (now a member of the Court of Appeals) had before him at the summary judgment hearing in this case, Sparks acknowledged that he was verbally reprimanded by Moffitt for use of offensive language. Moffitt warned Sparks that if Sparks "was found guilty of vulgar language . . . [he] would be terminated."

From the record and the deposition testimony of Waddle, it appears that none of the above-cited incidents of inappropriate language about which Waddle testified occurred after plaintiff Waddle complained to Gray or Shelton. In February 1986, Waddle requested a transfer to the second shift. Guilford Mills granted the request on 24 February 1986. Thereafter, she was not supervised by defendant Sparks. On 22 October 1987 plaintiff Waddle voluntarily quit her job at Guilford Mills. She then complained that she was being unfairly accused of incorrectly measuring a set of beams, and she refused to sign a "write-up sheet" acknowledging the mistake. Apparently, at a later date, Guilford Mills deter-

mined that the mistake was not the fault of Waddle. Defendant Sparks was not involved in this final incident.

Plaintiff Jacqueline Simpson was also deposed on 16 August 1988. During her deposition, Simpson testified that on several occasions Sparks brushed his elbow against her breast while walking by her. She also stated that he frequently used dirty language and that, if someone talked to him about it, "he tried to turn it into something sexual." For example, when pressed by defendants' counsel for details of Sparks' "dirty talk," Simpson testified as follows:

> He said lots of dirty talk. If you had any—lots of people used lotion out there in dealing with the yarn. And they put lotion in your hand. If you had lotion in your hand and he came by he would say, "Who you been messing with?" or "Have you been messing with yourself?" or "We know what you've been doing." If the yarn was pulled apart in the middle, "What did you do, get your titty in that?" If there was a wet spot on the floor, "Did you pee on the floor?" If there was a wet spot on your pants, "What have you been doing?"

> If your legs were sore from walking and you'd say, "My legs are sore."

> He'd say, "Well, I know why they're sore."

On several occasions, Sparks also made lewd gestures to Simpson with his hands where he would turn his palm up and wiggle his middle finger.

When asked during her deposition to recount when any of these episodes took place, Simpson largely could not. She could not specify when any of these statements by Sparks occurred—even within a single year. Her responses were generally vague and apparently the majority of these incidents took place on a sporadic basis.

## II.

[1] Civil Procedure Rule 56 governs motions for summary judgment. Summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c) (1983).

The procedures and guidelines by which summary judgment is properly allowed have oft been recited by this Court, but they bear repeating here.

> By making a motion for summary judgment, a defendant may force a plaintiff to produce a forecast of evidence demonstrating that the plaintiff will be able to make out at least a prima facie case at trial. . . . The party moving for summary judgment has the burden of establishing the lack of any triable issue. . . . The movant may meet this burden by proving that an essential element of the opposing party's claim is nonexistent, *or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim* or cannot surmount an affirmative defense which would bar the claim. . . . All inferences of fact from the proofs offered at the hearing must be drawn against the movant and in favor of the party opposing the motion. . . .

*Boudreau v. Baughman*, 322 N.C. 331, 342-43, 368 S.E.2d 849, 858 (1988) (citations omitted).

Rule 56(e) of the Rules of Civil Procedure states:

> [w]hen a motion for summary judgment is made and supported as provided in this rule, *an adverse party may not rest upon the mere allegations or denials of his pleading,* but his response, by affidavits or as otherwise provided in this rule, must set forth *specific facts* showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

N.C.G.S. § 1A-1, Rule 56(e) (1983). We have previously held that summary judgment is properly entered in the movant's favor if the movant establishes that an essential part or element of the opposing party's claim is nonexistent. *Rorrer v. Cooke*, 313 N.C. 338, 329 S.E.2d 355 (1985). Therefore, in order to overcome defendants' motions for summary judgment, plaintiffs must have forecast sufficient evidence of all essential elements of their claims.

[2] The essential elements of an action for intentional infliction of emotional distress are "1) extreme and outrageous conduct by the defendant 2) which is intended to and does in fact cause 3) severe emotional distress." *Dickens v. Puryear*, 302 N.C. 437, 276 S.E.2d 325 (1981). *See also* Restatement (Second) of Torts § 46(1) (1965). Defendant contends, among other points, that plaintiff Waddle

**WADDLE v. SPARKS**

[331 N.C. 73 (1992)]

has failed to forecast sufficient evidence of "severe emotional distress." We agree. Because we believe plaintiff Waddle has failed to produce a sufficient forecast of evidence on this essential element of her claim, we need not, and therefore do not, address the remaining elements of this tort.

This Court first discussed the tort of intentional infliction of emotional distress in *Stanback v. Stanback*, 297 N.C. 181, 254 S.E.2d 611 (1979). In *Stanback* we stated that, in order to show severe emotional distress, the plaintiff must show she was suffering "emotional distress of a *very* serious kind." *Id.* at 196, 254 S.E.2d at 622 (citing William L. Prosser, *Handbook of The Law of Torts* § 12, at 56 (4th ed. 1971)) (emphasis added). We reaffirmed the validity of an independent claim for intentional infliction of emotional distress in *Dickens*, 302 N.C. 437, 276 S.E.2d 325. In *Dickens*, however, we failed to address in any detail the severe emotional distress element of this tort, having focused instead on the "extreme and outrageous" element. Today we focus on the crucial issue of what level of evidence is sufficient to show severe emotional distress in the context of an action for intentional infliction of mental distress.

[3] This is not the first time we have broached a definition of the element of severe emotional distress. In the context of a claim for *negligent* infliction of mental distress, we stated:

> the term "severe emotional distress" means any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of *severe and disabling* emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so.

*Johnson v. Ruark Obstetrics & Gynecology Assoc.*, 327 N.C. 283, 304, 395 S.E.2d 85, 97, *reh'g denied*, 327 N.C. 644, 399 S.E.2d 133 (1990) (emphasis added). We see no reason not to adopt the same standard for a claim for intentional infliction of emotional distress. At a minimum, applying the same standard to both torts promotes a symmetry desirable in this area of the law.

Support for a high standard of proof on the severe emotional distress element can also be found in the second Restatement of Torts, from which we have derived most of our present standards for the remaining elements of intentional infliction of emotional distress.

The rule stated in this section applies only where the emotional distress has in fact resulted, and where it is severe. Emotional distress passes under various names, such as mental suffering, mental anguish, mental or nervous shock, or the like. It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. *It is only where it is extreme that the liability arises.* Complete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. *The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.* The intensity and the duration of the distress are factors to be considered in determining its severity. . . . It is for the court to determine whether on the evidence severe emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed.

Restatement (Second) of Torts § 46 cmt. j (1965) (emphasis added). *See also Gagne v. Northwestern Nat'l Ins. Co.*, 881 F.2d 309 (6th Cir. 1989) (applying Ohio law); *Polk v. Yellow Freight System, Inc.*, 801 F.2d 190 (6th Cir. 1986) (applying Michigan law); and *Hubbard v. United Press Internat'l, Inc.*, 330 N.W.2d 428 (Minn. 1983).

As the drafters of the Restatement point out, the rationale for limiting or restricting liability for intentional infliction of emotional distress is simple:

The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where someone's feelings are hurt.

Restatement (Second) of Torts § 46 cmt. d (1965). The majority of jurisdictions having adopted the independent tort of intentional infliction of emotional distress have done so based on the standards enunciated in the Restatement. *See* Daniel Givelber, *The Right to Minimum Social Decency and the Limits of Evenhandedness: Intentional Infliction of Emotional Distress by Outrageous Conduct*, 82 Colum. L. Rev. 42, 43 n.9 (1982).

WADDLE v. SPARKS

[331 N.C. 73 (1992)]

### III.

[4] In the present action, plaintiff Waddle's forecast of evidence, taken in the light most favorable to her, fails to show that she has suffered the requisite degree of emotional distress necessary to maintain her cause of action. When questioned during her deposition about having ever seen a psychiatrist or psychologist, Waddle stated that she had not been to a psychiatrist since the early 1970's. This was well before the events comprising this lawsuit against defendants. Although Waddle did state that her doctor had prescribed "nerve pills" in March 1986 during a spate of family-related problems, she stated that she has only once taken the medication on a regular basis for any protracted period of time. This was during episodes of family-related stress due to problems with her mother and daughter. She stated that the only time she missed work during her employment with Guilford Mills was when her mother was hospitalized and again when her teenage daughter eloped. Waddle also *alleged* in her unverified complaint that she was continually upset and frequently cried; but, as Judge Lewis pointed out in his dissent below, she *testified* during her deposition to only one such incident and that did not involve defendant Sparks.

There is no forecast of any medical documentation of plaintiff's alleged "severe emotional distress" nor any other forecast of evidence of "severe and disabling" psychological problems within the meaning of the test laid down in *Johnson v. Ruark*, 327 N.C. at 304, 395 S.E.2d at 97. Consequently, we conclude that plaintiff Waddle has failed to forecast sufficient evidence of the "severe emotional distress" element of the tort to survive defendant Sparks' motion for summary judgment on this claim. We, therefore, reverse the Court of Appeals' decision to the contrary as to this plaintiff.

### IV.

Plaintiff Simpson has also alleged intentional infliction of emotional distress against defendant Sparks. We are persuaded that the unanimous decision of the Court of Appeals correctly concluded that plaintiff Simpson's forecast of evidence failed to show that any conduct of defendant Sparks occurred within the applicable statute of limitations.

[5] The statute of limitations for intentional infliction of mental distress is three years. *Dickens v. Puryear*, 302 N.C. 437, 442, 276 S.E.2d 325, 330 (1981). "Once a defendant has properly pleaded

the statute of limitations, the burden is then placed upon the plaintiff to offer a forecast of evidence showing that the action was instituted within the permissible period after the accrual of the cause of action." *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985); *see also Little v. Rose*, 285 N.C. 724, 208 S.E.2d 666 (1974). Defendants pleaded the statute of limitations as a defense to plaintiff Simpson's claim and relied on it in their separate motions for summary judgment. In order to sustain her claim over defendants' summary judgment motions, plaintiff Simpson was required to produce a forecast of evidence of "specific facts" which took place *after* 20 April 1985, three years prior to the filing of her complaint. *See* N.C. R. Civ. P. Rule 56(e). This she has not done.

[6] During her deposition, Simpson was unable to recount any one, specific instance which would sustain her claim over each defendant's motion for summary judgment based on the statute of limitations. Her testimony is replete with vague responses to opposing counsel's repeated questions as to when any of the events she has alleged took place. Not only could she not remember a day or month when any of defendant's alleged comments of a sexually suggestive nature occurred, but she also failed to recall the year they occurred. For example, the following exchange took place between Simpson and counsel for defendants:

Q. So are you [Simpson] testifying that you can't tell us any specific things that happened to you in either 1985 or 1986?

A. Just what I've already told you. Like a [sic] said, I don't know any dates. I just know the stuff happened. That's why I left.

Q. But you don't know when any of it happened?

A. No.

This exchange is typical of plaintiff Simpson's answers to defendants' repeated inquiries as to when any of the alleged incidents took place. Her forecast of evidence has failed to place any of Sparks' conduct within the applicable statute of limitations for claims of intentional infliction of mental distress.

We are cognizant of the fact that Simpson stated during her deposition that some or all of defendant Sparks' questionable con-

duct occurred throughout her employment at Guilford Mills. For example, at one point, Simpson testified as follows:

Q. (by Mr. Farran) When did you quit Guilford Mills?

A. In February of '86.

Q. And why did you quit?

A. Because all this stuff was still going on. *It continued until the time I left.* And I waited to see improvements and there was none.

Q. Now when you say "all this stuff," what are you referring to?

A. Cussing, the favoritism and the sexual harassment.

(Emphasis added.) If plaintiff Simpson could have testified that any of the specific incidents with Sparks occurred as late as February of 1986, her evidentiary forecast of Sparks' conduct would have been sufficient to survive a summary judgment motion based on the statute of limitations. Simpson, however, was not able to state a date—even within a year—when any one of the various specific incidents she alleges against Sparks occurred. As such, she has failed to meet the requirements of Civil Procedure Rule 56(e) which mandate that the non-movant "may not rest upon the mere allegations of [her] pleading," but must instead "set forth *specific facts* showing that there is a genuine issue for trial." This plaintiff Simpson has not done. We, therefore, affirm the Court of Appeals' decision that summary judgment was properly entered against plaintiff Simpson on her intentional infliction of emotional distress claim against defendant Sparks.

V.

[7] An essential element of a claim for negligent retention of an employee is that the employee committed a tortious act resulting in plaintiffs' injuries. *Pleasants v. Barnes*, 221 N.C. 173, 177, 19 S.E.2d 627, 629 (1942). *See also Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 340 S.E.2d 116, *disc. rev. denied*, 317 N.C. 334, 346 S.E.2d 141 (1986). Because we hold that summary judgment in Sparks' favor was proper on both plaintiffs' intentional infliction of emotional distress claims, the only tort at issue against Sparks, we likewise hold that both plaintiffs' negligent retention claims against Guilford Mills cannot survive its motion for summary judgment as to these claims.

The decision of the Court of Appeals as to plaintiff Waddle is reversed and the judgments of the Superior Court, Guilford County, are reinstated. The decision of the Court of Appeals as to plaintiff Simpson is affirmed.

Reversed as to Plaintiff Waddle.

Affirmed as to Plaintiff Simpson.

Justice LAKE did not participate in the consideration or decision of this case.