ANTHONY SIMMONS, PLAINTIFF-APPELLANT v. CHEMOL CORPORATION,
DEFENDANT-APPELLEE

No. COA99-385-2

(Filed 4 April 2000)

### 1. Employer and Employee— wrongful discharge—welder—respiratory irritation

The trial court did not err by granting summary judgment for defendant on a wrongful discharge claim where plaintiff, a welder, alleged that his rhinitis, an inflammation of the nasal membrane, rendered him handicapped and that his discharge violated public policy. Plaintiff's medical records establish that his condition is temporary; a discussion of reasonable accommodation is irrelevant under the Equal Employment Practices Act, on which plaintiff's claim is based; plaintiff received evaluation scores below an acceptable level for quality of work, technical application, reliability, and punctuality; and both his supervisor and plant manager thought that plaintiff's respiratory problems had been resolved well before his termination.

### 2. Emotional Distress— intentional and negligent—employment termination

The trial court did not err by granting summary judgment for defendant on claims for intentional and negligent infliction of emotional distress arising from an employment termination.

Appeal by plaintiff from order entered 10 February 1999 and filed 11 February 1999 by Judge Russell G. Walker, Jr. in Guilford County Superior Court. Heard in the Court of Appeals 10 January 2000.

*Gray, Newell & Johnson, L.L.P., by Angela Newell Gray, for plaintiff-appellant.*

*Pinto Coates Kyre & Brown, PLLC, by Martha P. Brown, for defendant-appellee.*

WALKER, Judge.

On 15 May 1998, plaintiff filed this action alleging wrongful discharge in violation of public policy pursuant to N.C. Gen. Stat. § 143-422.2, along with a claim for negligent and intentional infliction of emotional distress. Defendant answered and moved to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil

Procedure on 18 June 1998, which the trial court denied on 13 August 1998. On 15 January 1999, defendant moved for summary judgment pursuant to Rule 56 of the North Carolina Rules of Civil Procedure, which the trial court granted on 10 February 1999.

Plaintiff began his employment with defendant as a general welder on or about 22 July 1996. Approximately six months later, plaintiff began suffering from a respiratory condition subsequently diagnosed as "rhinitis," an allergic reaction characterized by the inflammation of the nasal membrane. *See* Kenneth G. Trestman, M.D., and Carey Howes, Medical Editor, *Allergies, in* Attorneys' Textbook of Medicine par. 65.41 (3d ed. 1998). Plaintiff claims he had difficulty breathing while performing his duties at work and that the quality of his work and his attendance record suffered due to his condition. Further, he requested that defendant provide breathing masks, ceiling fans and other breathing aids that would accommodate his breathing problems; however, these requests were disregarded. Plaintiff also claims he was required to work in a chemical tank without adequate ventilation, was not allowed time off for medical treatment for his condition, and was given a poor evaluation for attendance although the absences were verified by his doctors. As a result, plaintiff contends he suffered chronic headaches, fatigue, financial problems and "significantly exacerbated breathing problems" due to defendant's behavior.

[1] Plaintiff argues that the trial court erred in granting summary judgment to defendant on his claim of wrongful discharge. Specifically, plaintiff produced a sufficient forecast of evidence that his respiratory condition rendered him handicapped as defined in N.C. Gen. Stat. § 168A-3(4)(a) (1998 Cum. Supp.). Additionally, defendant terminated his employment because of his condition, thus violating the public policy set out in N.C. Gen. Stat. § 143-422.2 (1999). Plaintiff also claims that defendant's indifference and failure to provide reasonable accommodations so he could perform his job constitutes intentional and negligent infliction of emotional distress.

Defendant contends that plaintiff's respiratory condition is not a handicap protected under N.C. Gen. Stat. § 143-422.2. Specifically, plaintiff's rhinitis is a temporary condition that did not substantially limit plaintiff's ability to breathe or work. Additionally, defendant contends that plaintiff was terminated for poor performance in his employment. In support of its motion for summary judgment, defend-

**SIMMONS v. CHEMOL CORP.**

[137 N.C. App. 319 (2000)]

ant submitted the affidavits of maintenance supervisor Gary Keegan and plant manager Spencer F. Foster, a job performance evaluation of plaintiff, and other documents from plaintiff's employment file. These show that:

> (1) On 30 May 1997, plaintiff was reprimanded by Keegan for plaintiff's excessive personal phone calls during working hours;

> (2) On 5 June 1997, plaintiff was counseled for his failure to work required overtime;

> (3) On 29 August 1997, plaintiff was again reprimanded for personal phone calls during working hours and was informed that any further violation of this policy would result in his suspension or possible termination; and

> (4) Plaintiff's 4 September 1997 performance evaluation resulted in an overall score below the acceptable standard.

Defendant claims that plaintiff's poor quality of work, lack of progress, and failure to meet minimum quality standards within his department were the reasons for his termination on 16 September 1997.

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1 Rule 56(c) (1999). The party moving for summary judgment bears the burden of establishing the lack of any triable issue and may meet this burden by (1) proving that an essential element of the opposing party's claim is nonexistent; (2) showing through discovery that the opposing party cannot produce evidence to support an essential element; or (3) showing that the opposing party cannot surmount an affirmative defense. *Roumillat v. Simplistic Enterprises, Inc.*, 331 N.C. 57, 63, 414 S.E.2d 339, 342 (1992).

In North Carolina, absent an employment contract for a definite period of time, "both employer and employee are generally free to terminate their association at any time and without reason." *Gravitte v. Mitsubishi Semiconductor America*, 109 N.C. App. 466, 472, 428 S.E.2d 254, 258, *disc. review denied*, 334 N.C. 163, 432 S.E.2d 360 (1993).

An exception to the employment-at-will doctrine exists when an employee is discharged in contravention of public policy. *Coman v. Thomas Manufacturing Co.*, 325 N.C. 172, 175, 381 S.E.2d 445, 447 (1989). "At the very least public policy is violated when an employee is fired in contravention of express policy declarations contained in the North Carolina General Statutes." *Amos v. Oakdale Knitting Co.*, 331 N.C. 348, 353, 416 S.E.2d 166, 169 (1992). The Equal Employment Practices Act of North Carolina (the Employment Act) provides in pertinent part:

> It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of . . . handicap. . . .

N.C. Gen. Stat. § 143-422.2 (1999). The Employment Act does not define "handicap" and thus we turn to other North Carolina statutes relating to the same subject matter to determine legislative intent. *McCullough v. Branch Banking & Trust Co., Inc.*, 136 N.C. App. 340, —— S.E.2d —— (2000).

The North Carolina Handicapped Persons Protection Act (NCHPPA), N.C. Gen. Stat. § 168A-1 *et seq.*, defines a "handicapped person" as:

> any person who (i) has a physical or mental impairment which substantially limits one or more major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment.

N.C. Gen. Stat. § 168A-3(4)(a) (1998 Cum. Supp.). Effective 1 October 1999, the NCHPPA was re-titled the North Carolina Persons with Disabilities Protection Act and amended such that "person with a disability" is generally substituted for "handicapped person" throughout the chapter. However, since plaintiff's claim was filed before the amendment took effect, the terminology of the NCHPPA will be used.

"Physical or mental impairment" is defined in part as "any physiological disorder or abnormal condition, . . .caused by. . . illness, affecting one or more of the following body systems: [. . .] respiratory. . . ." N.C. Gen. Stat. § 168A-3(4)(a)(i). "Major life activities" includes "breathing." N.C. Gen. Stat. § 168A-3(4)(b). "Any disorder, condition or disfigurement which is temporary in nature

**SIMMONS v. CHEMOL CORP.**

[137 N.C. App. 319 (2000)]

leaving no residual impairment" is specifically excluded from the meaning of "physical or mental impairment." N.C. Gen. Stat. § 168A-3(4)(a)(iii)(C).

Medical records of the plaintiff dated 21 November 1997 state:

[Plaintiff] [q]uit vaccine around September [1997] when [he] lost [his] job. [He] had been welding inside "tanks" with fume exposure irritating to [his] nose. [He] is still welding now but outdoors and [he] says the sniffing has stopped. [His] chest feels fine and [he] feels well.

Impression: Allergic and irritant rhinitis, now improved.

Another medical record dated 12 March 1997 states in part: "He has a lot of sniffing, he is irritated, but I think his infection is over. . . ."

Affording plaintiff the required inferences, *Roumillat*, 331 N.C. at 63, 414 S.E.2d at 342 (all inferences drawn in favor of non-movant in deciding motion for summary judgment), plaintiff's medical records establish that his condition is temporary and therefore excluded from the statutory definition of "physical impairment." Furthermore, plaintiff is unable to establish that he was "handicapped" under elements (ii) or (iii) of section 168A-3(4).

Plaintiff also argues that he is a "qualified handicapped person" as defined by N.C. Gen. Stat. § 168A-3(9). However, since one's status as a "qualified handicapped person" must be "preceded by a determination that one is a 'handicapped person,' " plaintiff is not "a qualified handicapped person" either. *Gravitte*, 109 N.C. App. at 470, 428 S.E.2d at 257.

Additionally, plaintiff's concern with the defendant's alleged failure to provide reasonable accommodations to the plaintiff is misplaced. Had plaintiff filed a claim under N.C. Gen. Stat. § 168A-11, which provides a civil cause of action under the NCHPPA, such a discussion may have been appropriate. However, since plaintiff's claim is based on wrongful discharge in violation of public policy under N.C. Gen. Stat. § 143-422.2, a discussion of reasonable accommodations under N.C. Gen. Stat. § 168A-3(9) and (10) is irrelevant.

Plaintiff also contends that he was terminated because of his respiratory condition resulting from his employment. In support of his contention, plaintiff cites his performance evaluation which states

that at times his work was excellent and "the only area in which he received less than satisfactory was in attendance." Plaintiff also states that "his supervisor" told him he was being terminated due to his respiratory condition.

However, the affidavit of plaintiff's supervisor, Gary Keegan, states in part:

> 3. Mr. Simmons was terminated from his employment on September 16, 1997 for poor job performance. Mr. Simmons' continued lack of progress in being able to tackle projects, learn basic mechanical repair, refusal to work required overtime and failure to meet minimum quality standards within the department led to his dismissal. The day before his termination, Mr. Simmons left work and refused to work overtime to complete a mechanical repair which he had started.

The "Supervisor Summary" section of the plaintiff's 4 September 1997 performance evaluation states:

> Anthony's overall work and attendance record needs improvement. At times, Anthony can be an excellent employee and team player, and at other times he will fall short of acceptable standards. Increased consistency of excellent work and a better attendance record can bring Anthony into the acceptable range.

Plaintiff received below acceptable standard scores for his quality of work, technical application, and reliability and punctuality. The evaluation noted "numerous absences" and "numerous lateness [sic]." Additionally, the report stated "Anthony is very apprehensive about working on weekends and late during the week. These areas need work."

Plaintiff was terminated approximately eight months after he first complained of experiencing breathing problems. Both Keegan's and Foster's affidavits state that they thought plaintiff's respiratory problems had completely resolved well before his termination.

In sum, defendant has established that plaintiff is unable to prove that he is handicapped and that he was terminated based upon the alleged handicap. These being essential elements of his claim, summary judgment for defendant on the claim for wrongful discharge was proper.

[2] Plaintiff also argues that the trial court erred in granting summary judgment to defendant on his claims for intentional and negligent infliction of emotional distress.

In an action for intentional infliction of emotional distress, the essential elements are "(1) extreme and outrageous conduct by the defendant (2) which is intended to and does in fact cause (3) severe emotional distress." *Waddle v. Sparks*, 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992) (*quoting Dickens v. Puryear*, 302 N.C. 437, 276 S.E.2d 325 (1981)). An action for negligent infliction of emotional distress requires a showing that defendant negligently engaged in conduct, which was reasonably foreseeable to cause, and did in fact cause, plaintiff to suffer severe emotional distress. *Fields v. Dery*, 131 N.C. App. 525, 526, 509 S.E.2d 790, 791 (1998), *disc. review denied*, 350 N.C. 308, —— S.E.2d —— (1999). Whether or not conduct constitutes extreme and outrageous behavior is initially a question of law for the court. *Wagoner v. Elkin City Schools' Bd. of Education*, 113 N.C. App. 579, 586, 440 S.E.2d 119, 123, *disc. review denied*, 336 N.C. 615, 447 S.E.2d 414 (1994). To establish the essential element of extreme and outrageous conduct, the conduct must go beyond all possible bounds of decency and "be regarded as atrocious, and utterly intolerable in a civilized community. The liability clearly does not extend to mere insults, indignities, threats, . . . ." *Id.*

Viewing the evidence in the light most favorable to the non-moving party, the plaintiff is unable to establish a showing of extreme and outrageous conduct on the part of defendant. Furthermore, plaintiff's forecast of evidence fails to support a claim of negligent infliction of emotional distress. Accordingly, the trial court did not err in granting summary judgment to defendant on the claims of intentional and negligent infliction of emotional distress.

Affirmed.

Chief Judge EAGLES and Judge WYNN concur.