**Ronald I. NANCE, Plaintiff,**

v.

**John POTTER, Postmaster General, United States Postal Service, Defendant.**

**No. CIV.1:01CV01083.**

United States District Court, M.D. North Carolina.

Sept. 24, 2002.

Romallus O. Murphy, Greensboro, NC, for plaintiff.

Ronald I. Nance, Greensboro, NC, pro se.

Lynne P. Klauer, Office of U.S. Atty., Greensboro, NC, for defendant.

## MEMORANDUM OPINION

BULLOCK, District Judge.

Plaintiff Ronald I. Nance, proceeding *pro se*, ("Plaintiff") filed this action on December 10, 2001, alleging negligent infliction of emotional distress (Count One), retaliation in violation of the anti-retaliation provision (42 U.S.C. § 12203) of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5 *et seq.* (Count Two), intentional infliction of emotional distress (Count Three), discrimination in violation of Title VII of the Civil Rights Act of 1964 (Count Four), and discrimination in violation of the Rehabilitation Act, 29 U.S.C. §§ 791–96 (Count Five) against his employer, Defendant John Potter, Postmaster General of the United States Postal Service ("Defendant").[1] This matter is presently before the court on Defendant's motion to dismiss or, in the alternative, for summary judgment. Because both parties have had the opportunity to attach and rely upon matters outside the pleadings, the court will treat the motion as one for summary judgment. For the following reasons, the court will grant Defendant's motion.

### FACTS

As the court has found in its previous opinion, *Nance v. Postmaster General,* No. 1:99CV00257 (M.D.N.C. June 15, 2000), Plaintiff began working for the United States Postal Service ("USPS") as a letter carrier in Shreveport, Louisiana, in 1982.

During his employment in Shreveport, Plaintiff was involved in an accident while driving his postal vehicle. The USPS determined that Plaintiff was at fault in the accident and reassigned Plaintiff to a lower-paying position in 1985. Thereafter, in November 1989, Plaintiff resigned from the USPS.

On July 10, 1994, Plaintiff requested reinstatement with the USPS, seeking to be placed in a USPS facility in Norfolk, Virginia (the "Norfolk facility"). The USPS responded to Plaintiff's request on September 19, 1995, informing Plaintiff that there were no vacancies at that time at the Norfolk facility. Plaintiff also applied for reinstatement in Greensboro, North Carolina, where he was then residing, and was reinstated as a part-time, flexible mail handler at the USPS bulk mail center in Greensboro on December 9, 1995. On December 14, 1995, less than a week after his reinstatement in Greensboro, Plaintiff requested a transfer to the Norfolk facility. Thereafter, on February 6, 1996, Plaintiff requested a hardship transfer to the Norfolk facility. On February 27, 1996, Plaintiff was informed that as a mail handler he was subject to a twelve-month waiting period before he could request a transfer.

On April 27, 1996, Plaintiff was injured on the job at the Greensboro facility when he attempted to remove jammed mail from a machine. Plaintiff sustained a head injury and was treated at the hospital. However, he recovered fully and was able to return to work within a few days. On May 31, 1996, Plaintiff experienced severe back pain while unloading bags of mail from a delivery truck at the Greensboro facility and was out of work for several months with a ruptured disk. On June 7, 1996, Plaintiff made another request to transfer to the Norfolk facility. The USPS re-

---

1. Plaintiff's claims are somewhat unclear in his complaint. The court determined the five counts listed in Plaintiff's complaint to be as described above.

sponded on June 24, 1996, again denying Plaintiff's transfer request and reiterating the twelve-month waiting requirement for mail handlers.

On July 3, 1996, Plaintiff underwent back surgery to repair his ruptured disk. After his back surgery, Plaintiff did not return to work until October 1996. Upon his return, Plaintiff was placed on limited duty and was responsible for handling loose and damaged mail. On January 21, 1997, Plaintiff's doctor recommended that Plaintiff be on light duty through the end of the year and refrain from repetitive lifting, lifting over twenty pounds, and intermittent standing. Plaintiff's doctor also noted that it would be preferable for Plaintiff to work on a non-concrete floor surface and to engage solely in office-type work for that time period. On April 25, 1997, Plaintiff once again requested a transfer to the Norfolk facility. In his request, Plaintiff indicated that he had sustained a back injury. In reviewing Plaintiff's transfer request, USPS officials from the Norfolk facility examined Plaintiff's official personnel file and an evaluation from Plaintiff's supervisor in Greensboro. This work evaluation rated Plaintiff's work performance and safety as poor, and it gave him only average ratings on other evaluation criteria. Plaintiff's supervisor noted that he personally would not accept Plaintiff as a transfer and that Plaintiff was on light duty through the end of 1997. After a review of Plaintiff's file and the evaluation from Plaintiff's supervisor, USPS officials from the Norfolk facility advised Plaintiff that his transfer request was denied because Plaintiff was unable physically to assume the full duties of the mail handler position. The denial of Plaintiff's transfer request was also because of his poor safety record and the unfavorable evaluation from Plaintiff's supervisor.

Plaintiff filed a formal complaint with the Equal Employment Opportunity Commission ("EEOC") on July 23, 1997, alleging disability discrimination based upon the denial of his request to transfer to the Norfolk facility. On December 18, 1997, the USPS issued a final agency decision dismissing Plaintiff's complaint, finding that Plaintiff had not established that he was a qualified individual with a disability within the meaning of the Rehabilitation Act and that there were legitimate nondiscriminatory reasons for denying Plaintiff's transfer request. Plaintiff timely appealed the decision dismissing his EEOC complaint to the EEOC's Office of Federal Operations ("OFO").

On March 3, 1999, the OFO vacated the final agency decision of the USPS and ordered a supplemental investigation. The supplemental investigation was completed on May 26, 1999. In the interim, on April 2, 1999, Plaintiff filed a action against the then-Postmaster General of the USPS in this court, alleging violations of the Rehabilitation Act and the ADA, among other claims. This prior action was resolved on June 15, 2000, when this court granted summary judgment for the Defendant. Plaintiff's Rehabilitation Act and ADA claims failed in the prior action, primarily because the court found that the Plaintiff failed to present sufficient evidence that he was disabled.[2] *Nance v. Postmaster General*, No. 1:99CV00257, slip op. at 8–14 (M.D.N.C. June 15, 2000).

Plaintiff's present complaints began as a series of requests for Equal Employment Opportunity ("EEO") counseling, followed by formal EEOC complaints. On March 7, 2000, Plaintiff requested EEO counseling

2. This decision was rendered two months after the alleged acts upon which Plaintiff's present claims are based.

because he believed the USPS had refused an unspecified accommodation Plaintiff had requested on January 19, 2000.[3] On April 12, 2000, Plaintiff filed a formal complaint of discrimination on that claim (Case No. 1D272001800) alleging acts of disability discrimination and retaliation on January 19, 2000. (Def.'s Mem. Supp. Mot. to Dismiss or in Alternative for Summ. J. at Ex. A, Attach. 5.)

On April 12, 2000, Plaintiff sought EEO counseling on a claim that he was discriminated against and retaliated against at a meeting on April 11, 2000, in which Plaintiff was offered a light-duty position. Plaintiff alleged that USPS managers at the meeting attempted to coerce Plaintiff to accept or reject the light-duty position offered. (Id. at Attach. 3.) On June 29, 2000, Plaintiff filed a formal complaint of discrimination on this claim (Case No. 1D272002200), alleging acts of disability discrimination and retaliation on April 11, 2000 (Id. at Attach. 6.)

On May 24, 2000, Plaintiff sought EEO counseling for what he referred to as a "violation of [the] USPS/OWCP Rehabilitation Program" on May 23, 2000. (Id. at Attach. 4) Thereafter, Plaintiff filed a formal complaint of discrimination on this claim (Case No. 1D272002500).[4] (Id. at Attach. 6.)

The USPS dismissed all three of Plaintiff's above claims. On April 26, 2000, the USPS dismissed Case No. 1D272001800 for Plaintiff's failure to contact an EEO counselor within forty-five days of the alleged incident. (Id. at Attach. 7.) On August 8, 2000, the USPS dismissed Case No.

1D272002500 because it stated the same claim as another case (Case No. 1D272002200) pending before the USPS. (Id. at Attach. 8.) Also on August 8, 2000, the USPS dismissed Case No. 1D272002200 due to Plaintiff's failure to show that he was "aggrieved" by the allegedly discriminatory acts of the USPS. (Id. at Attach. 9.)

Plaintiff appealed the decisions in Cases Nos. 1D272001800 and 1D272002200 to the OFO of the EEOC. The OFO found that Plaintiff's claims in these two cases "comprise a single claim of denial of a reasonable accommodation and together they state a claim." (Id.) Based upon this reasoning, the OFO reversed the decisions of the USPS in these two cases and remanded them for consolidated processing. Plaintiff requested reconsideration of the OFO decision. On November 28, 2001, the OFO denied Plaintiff's request for reconsideration.

Thereafter, on December 10, 2001, Plaintiff filed the present action in this court alleging negligent infliction of emotional distress (Count One), retaliation in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e–5 et seq. (Count Two), intentional infliction of emotional distress (Count Three), discrimination in violation of Title VII (Count Four), and discrimination in violation of the Rehabilitation Act, 29 U.S.C. §§ 791–796 (Count Five) against Defendant.

Defendant argues that Plaintiff's tort claims (Counts One and Three) should be

---

**3.** Plaintiff filled out an information form when he sought EEO counseling on March 7, 2000. (Def.'s Mem. Supp. Mot. to Dismiss or in Alternative for Summ. J. at Ex. A, Attach. 1.) On this form Plaintiff stated that the USPS refused his requested accommodations. However, there is no indication of the accommodations sought and allegedly refused.

**4.** Subsequent documents relating to Case No. 1D272002500 reveal that the basis of this complaint was the April 11, 2000, meeting when USPS managers offered Plaintiff a light duty position and allegedly coerced him to accept or reject the position. (Def.'s Mem. Supp. Mot. to Dismiss or in Alternative for Summ. J. at Ex. A, Attach. 8.)

dismissed because they are barred by various federal statutes. Defendant argues that Plaintiff's retaliation and discrimination claims (Counts Two, Four, and Five) should be dismissed because Plaintiff failed to exhaust his administrative remedies. In the alternative, Defendant seeks summary judgment on Plaintiff's discrimination claims.

## DISCUSSION

Summary judgment may be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party bears the burden of persuasion on the relevant issues. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party may survive a motion for summary judgment by producing "evidence from which a [fact finder] might return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When the motion is supported by affidavits, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *see also Cray Communications, Inc. v. Novatel Computer Sys., Inc.,* 33 F.3d 390, 393–94 (4th Cir.1994) (moving party on summary judgment motion can simply argue the absence of evidence by which the non-movant can prove her case). In considering the evidence, all reasonable inferences are to be drawn in favor of the non-moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [fact finder] could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505.

## A. Plaintiff's Tort Claims (Counts One and Three)

Plaintiff asserts claims against Defendant for intentional and negligent infliction of emotional distress. Under North Carolina law, an action for intentional infliction of emotional distress requires a plaintiff to prove the following elements: " '(1) extreme and outrageous conduct by the defendant (2) which is intended to and does in fact cause (3) severe emotional distress.' " *Waddle v. Sparks,* 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992) (quoting *Dickens v. Puryear,* 302 N.C. 437, 276 S.E.2d 325 (1981)). Under North Carolina law the elements for a claim of negligent infliction of emotional distress are that "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress (often referred to as 'mental anguish'), and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Johnson v. Ruark Obstetrics,* 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990) (citations omitted).

In this case, Defendant argues that Plaintiff's emotional distress claims should be dismissed because they are barred by the Federal Employee Compensation Act, 5 U.S.C. § 8101 *et seq.,* and/or the Postal Reorganization Act, 39 U.S.C. §§ 1001–1011, 1201–1209. Although Defendant may be correct, Plaintiff's claims fail regardless because he has failed to show any extreme and outrageous conduct by Defendant or that he suffered any severe emotional distress.

The question of whether conduct "constitutes extreme and outrageous behavior is initially a question of law for the court." *Simmons v. Chemol Corp.,* 137 N.C.App. 319, 325, 528 S.E.2d 368, 372 (2000) (citation omitted). In order to establish that conduct is extreme and outrageous, the conduct in question must go

beyond all possible bounds of decency and " 'be regarded as atrocious, and utterly intolerable in a civilized community. The liability clearly does not extend to mere insults, indignities, [or] threats.' " *Wagoner v. Elkin City Schs.' Bd. of Educ.*, 113 N.C.App. 579, 586, 440 S.E.2d 119, 123 (1994) (quoting *Daniel v. Carolina Sunrock Corp.*, 110 N.C.App. 376, 383, 430 S.E.2d 306, 310, *rev'd in part*, 335 N.C. 233, 436 S.E.2d 835 (1993)). The only conduct Plaintiff calls into question here is Defendant's alleged failure to accommodate and Defendant's alleged attempt to coerce Plaintiff into accepting or rejecting a light duty job. Such conduct falls far short of the level necessary to constitute extreme and outrageous behavior as it is not "atrocious, and utterly intolerable in a civilized community." *Id.*

■ Similarly, Plaintiff has failed to show that he has suffered severe emotional distress. Under North Carolina law, " '[i]t is for the court to determine whether on the evidence severe emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed.' " *Waddle*, 331 N.C. at 84, 414 S.E.2d at 28 (quoting Restatement (Second) of Torts § 46 cmt. j (1965)). The North Carolina Supreme Court has defined severe emotional distress as "any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Johnson*, 327 N.C. at 304, 395 S.E.2d at 97. The level of emotional distress must be severe; "mere temporary fright, disappointment, or regret will not suffice." *Id.* Plaintiff has failed to offer sufficient evidence of severe emotional distress in order to survive summary judgment. He has failed to allege that he suffers from the above conditions or any other severe emotional or mental disor-

ders. His only evidence that could even arguably be considered as evidence of emotional or mental problems are medical records which indicate that he has suffered from hypertension and that he has seen a doctor for stress management. (Pl.'s Compl. at Ex. 4, pp. 18–19.) However, these conditions fall far short of the evidence necessary to establish severe emotional distress. Furthermore, Plaintiff has failed to show any evidence that his alleged severe emotional distress was causally connected to any conduct by the Defendant. Accordingly, Plaintiff's emotional distress claims fail as a matter of law.

B. *Plaintiff's Retaliation and Discrimination Claims (Counts Two, Four, and Five)*

Plaintiff's retaliation and discrimination claims consist of Title VII claims, a Rehabilitation Act claim of failure to accommodate, and an ADA retaliation claim. These claims fail for the following reasons.

1. *Title VII Claims*

■ Title VII creates a federal cause of action for employment discrimination based upon an "individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2. Before a federal court may assume jurisdiction over a claim under Title VII, a claimant must exhaust administrative procedures and remedies outlined in Title VII. *Davis v. North Carolina Dep't of Correction*, 48 F.3d 134, 137 (4th Cir.1995). Where a plaintiff's claims "exceed the scope of the EEOC charge[s] and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred." *Dennis v. County of Fairfax*, 55 F.3d 151, 156–57 (4th Cir.1995) (citing *EEOC v. General Elec. Co.*, 532 F.2d 359, 366 (4th Cir.1976)). In this case, Plaintiff's EEOC complaints alleged acts of disability discrimination and

retaliation. In his complaint filed in this court, Plaintiff alleges discrimination in violation of Title VII in addition to disability discrimination and retaliation. Plaintiff's complaint is somewhat unclear as to what type of discrimination he alleges under Title VII.[5] However, Title VII permits discrimination claims only on the basis of an "individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2. Thus, regardless of the type of Title VII discrimination to which Plaintiff believes he has been subjected, such discrimination would exceed the scope of his EEOC complaints, which allege discrimination solely on the basis of disability and retaliation for filing complaints due to disability discrimination. Therefore, to the extent that Plaintiff alleges Title VII discrimination in his complaint, that claim will be dismissed.

### 2. Rehabilitation Act Discrimination Claim

The Rehabilitation Act provides that:

[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination ... under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). The Rehabilitation Act imposes on agencies and the USPS a duty to provide "reasonable accommodations" to a disabled employee who could perform a job's essential functions with such accommodations, unless the provision of accommodations would place an "undue

hardship" on the agency. 29 C.F.R. §§ 1614.203(c)(1), 1614.102(a)(8).

In order for a claimant to be entitled to reasonable accommodations, the claimant must have a disability within the meaning of the Rehabilitation Act. The term "disability" as defined in the ADA and utilized in the Rehabilitation Act[6] means "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

In this case, Plaintiff argues that he was disabled in fact, on record, and by perception at the time of Defendant's alleged failure to accommodate him. However, the result Plaintiff seeks is foreclosed by principles of res judicata, or claim preclusion.

Plaintiff's EEOC complaints, upon which the present action is based, indicate that Defendant's alleged failure to accommodate occurred on January 19 and on April 11, 2000. Over two months later, on June 15, 2000, this court held in Plaintiff's prior action that, at that time, Plaintiff was not disabled within the meaning of the Rehabilitation Act or the ADA. Nance v. Postmaster General, United States Postal Service, Henderson, No. 1:99CV00257, slip op. at 14 (M.D.N.C. June 15, 2000) ("Plaintiff has failed to offer sufficient evidence to raise a genuine issue of material fact as to whether he has a physical or mental impairment that substantially limits one or more of his major life activities, has a record of a physical or mental impairment

---

**5.** Plaintiff's complaint mentions discrimination based upon race once; however, it includes no factual allegations concerning racial discrimination. (See generally Pl.'s Compl.)

**6.** The Rehabilitation Act and the ADA "generally are construed to impose the same requirements due to the similarity of the language of the two acts." Baird v. Rose, 192 F.3d 462, 468 (4th Cir.1999) (citation omitted); see also Myers v. Hose, 50 F.3d 278, 281 (4th Cir.1995).

which substantially limits one or more of his life activities, or is regarded by Defendant as having a physical or mental impairment that substantially limits one or more of his life activities.").

Plaintiff has failed to make new arguments or to set out any evidence demonstrating that he became disabled in fact, on record, or by perception in the time between Plaintiff's prior action and the dates of Defendant's alleged failure to accommodate him. The "disability" that Plaintiff apparently relies on is the same back injury and subsequent surgery that the court considered in its prior decision. Thus, Plaintiff is foreclosed by principles of *res judicata* from asserting that he is disabled. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981) ("A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.") (citations omitted). Accordingly, Plaintiff's Rehabilitation Act claim fails.

### 3. *ADA Retaliation Claim*

■ Count Two of Plaintiff's complaint alleges retaliation in violation of the ADA. (Compl. at 6.) To the extent that Plaintiff claims a violation of the ADA, his claim must fail because the USPS is "an independent establishment ... of the Government of the United States," and therefore is expressly exempted from the terms of the ADA. *See* 39 U.S.C. § 201; 42 U.S.C. § 12111(2), (5)(B)(i); *Rivera v. Heyman*, 157 F.3d 101, 103 (2d Cir.1998); *Brown v. Henderson*, 2000 WL 362035 at *1 (S.D.Ala.2000). Plaintiff's sole remedy for a claim of retaliation against the USPS is under the Rehabilitation Act, which he has not alleged. *See Rivera*, 157 F.3d at 103.

■ Under the liberal pleading requirements afforded a *pro se* plaintiff, however, the court will treat Plaintiff's claim of retaliation as one coming under the provisions of the Rehabilitation Act. To establish a *prima facie* case of retaliation, a plaintiff must prove that (1) he engaged in protected activity; (2) the plaintiff's employer took adverse employment action against the plaintiff; and (3) a causal connection existed between the protected activity and the adverse action. *Hooven–Lewis v. Caldera*, 249 F.3d 259, 272 (4th Cir.2001) (citing *Causey v. Balog*, 162 F.3d 795, 803 (4th Cir.1998)).

■ In this case, Plaintiff's retaliation claim based upon the Rehabilitation Act fails because Plaintiff has failed to show that Defendant took adverse employment action against Plaintiff. Plaintiff claims that he was discriminated against and retaliated against at a meeting on April 11, 2000, in which Plaintiff was offered a light duty position and the USPS managers at the meeting allegedly attempted to coerce Plaintiff to accept or reject the light duty position offered. This conclusory assertion is insufficient to establish a *prima facie* case of retaliation. *Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir. 1988) (stating that plaintiff's own opinions and conclusory allegations do not have sufficient "probative force to reflect a genuine issue of material fact").

Assuming *arguendo* that Plaintiff had set forth sufficient evidence that the USPS managers attempted to make him decide whether to accept or reject a light duty position, Plaintiff's retaliation claim would still fail because such conduct does not amount to adverse employment action. *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 708 (5th Cir.1997) (verbal threats and reprimands are not adverse employment action). Furthermore, the alleged incident had no effect on Plaintiff's work status or pay or other tangible employment benefits. *Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F.3d 239, 243 (4th Cir.1997) (stating that employer's conduct does not consti-

tute adverse employment action "without evidence that the terms, conditions, or benefits of her employment were adversely affected") (citation omitted). Accordingly, Plaintiff's retaliation claim fails.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss or, in the alternative, for summary judgment will be granted.

An order and judgment in accordance with this memorandum opinion shall be entered contemporaneously herewith.